(72 Misc. Rep. 122.)

PEOPLE ex rel. HOLLOCK v. PURDY et al., Commissioners of Taxes and Assessments.

(Supreme Court, Special Term, New York County.   May, 1911.)

1. TAXATION (§ 79*)—ASSESSMENT—TIME OF OWNERSHIP.
 In the city of New York the status of taxable property is fixed on the second Monday in January in each year.
 [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 79.*]

2. EMINENT DOMAIN (§ 56*)—NATURE OF RIGHT—PUBLIC NECESSITY.
 The fundamental right to condemn property in the first instance depends on public necessity, and such necessity is a sine qua non to its taking.
 [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 147–160; Dec. Dig. § 56.*]

3. EMINENT DOMAIN (§ 317*)—EFFECT OF CONDEMNATION PROCEEDINGS—TITLE ACQUIRED.
 Where the right of eminent domain is exercised by a municipality, the public character of the property taken continues during all the time the municipality possesses it, even though the property condemned is afterwards found to be unnecessary.
 [Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 317.*]

4. TAXATION (§ 217*)—PROPERTY SUBJECT—PUBLIC PROPERTY.
 That property condemned by a municipality for public use was found to be unnecessary for the object for which it was condemned does not render it subject to taxation on the theory of municipal private ownership.
 [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 355, 356; Dec. Dig. § 217.*]

5. TAXATION (§ 247*)—PROPERTY SUBJECT—PUBLIC PROPERTY.
 Where the city of New York owned property within its corporate limits on the second Monday of January, 1910, which it had acquired for public use and which was therefore exempted from taxation by Tax Law (Consol. Laws 1909, c. 62) § 4, subd. 3, and in the following May the property was sold because unnecessary for the object for which it had been condemned, the property is exempt from taxation for the year 1910.
 [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 247.*]

6. TAXATION (§ 183*)—PROPERTY SUBJECT—PUBLIC PROPERTY.
 Property of a municipality is not subject to taxation, whether employed for public use or held in a private capacity in trust for the public.
 [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 295; Dec. Dig. § 183.*]

Certiorari by the People, on the relation of John Hollock, to Lawson Purdy, and others, Commissioners of Taxes and Assessments of the City of New York, to review an assessment and have it canceled.   Assessment vacated.

Geo. D. Yeomans (Chas. L. Woody, of counsel), for relator.
Archibald R. Watson (Curtis A. Peters, of counsel), opposed.

ERLANGER, J.   The relator, claiming that his property has been illegally assessed, brought these proceedings to review the action of the tax commissioners and to have such assessment canceled.
 It appears that the property in question was acquired by the city

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on April 22, 1908, in accordance with the provisions of chapter 4 of the Laws of 1891, known as the "Rapid Transit Act." In its petition to this court for the appointment of commissioners of appraisal, the applicants, constituting the public service commission for the First district, among other things, set forth that it desired to acquire the same for public purposes, to wit, to construct a part of a rapid transit railroad, known as the "Brooklyn Loop Lines." After the property was so obtained, the subsurface of a portion thereof was appropriated for the object declared, and, after the work was completed, the surface was restored to its former state. All of the property, consisting of a number of parcels, except as mentioned, having become unnecessary for rapid transit purposes, the public service commission on May 24, 1910, pursuant to authority, sold the same at public auction to the relator for the sum of $251,000, subject, however, to the easements for the perpetual maintenance and operation of the subway structure as it now exists. The tax commissioners assessed the property for taxation for the year 1910 at the sum mentioned, and it is against this assessment that objection is made. The relator insists that at the time of his purchase the lands were exempt from taxation.

[1] In the city of New York the status of taxable property is fixed on the second Monday of January in each year. The city concedes that on the second Monday of January, 1910, it owned the property in question, and that it was not sold to the relator until May in that year. By subdivision 3 of section 4 of the tax law (Consol. Laws 1909, c. 62, p. 4023) it is enacted that property of a municipal corporation of the state held for a public use, except that portion of municipal property not within the corporation, is exempt from taxation. If the exemption existed on the second Monday of January, 1910, the city further admits that the assessment is unauthorized. It is sought to justify the assessment upon the ground that, as the necessity for the use of the property ceased, it was no longer an agency or means of city government, and therefore the holding on the part of the city was merely that of proprietor in like manner as a private individual holds his property. This contention it seems to me cannot be sustained.

[2, 3] The fundamental right to condemn in the first instance depended upon public necessity, and such necessity was a sine qua non to its taking. This fact the public service commission presented as the basis of its application. And, where the right of eminent domain is exercised, all that the law requires is that the property taken shall be dedicated to public purposes, and, once ownership of the municipality attaches, the public character continues during all the time it shall possess it. The mere fact that the property condemned was afterward found to be unnecessary does not, it seems to me, alter the rule. A city may become vested with the fee to lands by means other than by condemnation. It may obtain it by gift, devise, or by purchase. It may even acquire it, as was said in People ex rel. Mayor v. Assessors, 111 N. Y. 509, 19 N. E. 90, 2 L. R. A. 148, in satisfaction of a debt. While it cannot be said that property so obtained is held. by the municipality for governmental purposes, it nevertheless be-

longs to the public impressed with a trust for its benefit. So that, even if the lands in question were condemned for a specific purpose, and it was later ascertained that it could not be used in whole or in part for the object originally intended, it still remained public property, even though a private ownership is claimed for it.

In Brooklyn Park Com'rs v. Armstrong, 45 N. Y. 234, 243, 6 Am. Rep. 70, the Court of Appeals said on this subject:

"When land is condemned for a special purpose, on the score of public utility, the sequestration is limited to that particular use. But this is where the property is not taken, but the use only. Then, the right of the public being limited to the use, when the use ceases, the right ceases. Where the property is taken, the owner paid its true value, and the title vested in the public, it owns the whole property, and not merely the use; and, though the particular use may be abandoned, the right to the property remains. The property is still held in trust for the public by the authorities."

[4, 5] It does not seem to me, because the property in question was found to be unnecessary for the object condemned, that it was subject to taxation on the theory of municipal private ownership. If for that reason the power of taxation was exercisable on the second Monday of January, 1910, the property was taxable against the city who owned it at the time. But, if the object of taxation is to raise revenue to meet the expense of government, how could the city be benefited by taxing it against itself? This, it seems to me, is entirely incongruous with the fundamental theory of taxation. If the lands in question were outside of the territorial limits of the corporation, no question under the tax law could arise. But such is not the fact. The question of taxing the property of a municipality adjacent to a ferry came before the court in People ex rel. Mayor v. Assessors, 47 Hun, 390; and the court among other things said:

"The powers of a municipal corporation are divided between such as are governmental and public and proprietary and private, and it is believed that a failure to discriminate between these two kinds of powers and the manner and purposes of their exercises has sometimes led to confusion and misapplication of terms because property held and controlled by a city in its proprietary capacity, and used solely to promote the mere convenience of the public, may with propriety be said to be held for public purposes; and the fact that such property is controlled by the city in its proprietary capacity by no means renders such property private in its character."

The Court of Appeals, in affirming the lower court (111 N. Y. 509, 19 N. E. 90, 2 L. R. A. 148), held that although the city operated the ferry through lessees and derived revenue from the rental, and not by its own operation, that circumstance did not make the franchise or landing taxable. It did not decide whether property not devoted to public use was taxable. In that regard the opinion proceeds as follows:

"We prefer, however, to express no opinion on the question whether there is in principle a distinction between taxation of the property of a municipality strictly devoted to public uses, and property which it owns, though not acquired for a public use, although it may be held, on the general trust, applicable to all property of the corporation, but the acquisition or holding of which has no essential connection with the public functions of the municipality."

In Matter of Hamilton, 148 N. Y. 310, 42 N. E. 717, it was sought to have a legacy to the city relieved from taxation on the ground that it was exempt under the inheritance tax law. Mr. Justice O'Brien, writing for the court, said:

"The property held by the state, or by any of its municipal divisions, for public purposes, is not, and never has been, subject to taxation. The right to impose taxes is a part of the sovereign power which for obvious reasons has never been extended to property which the government itself holds for public use, or which is so held by a municipality. The latter is but a part of the state exercising for specific purposes a portion of the sovereign power delegated to it. The property to which it holds the title for public purposes stands upon the same footing in regard to taxation as that held by the state itself. The end and object of all taxation is to raise revenue for the purpose of defraying the expenses of government, and since no revenue could be raised by imposing taxes on property owned by the state itself, or by any of its political divisions, such property is in no just or practical sense the subject of taxation. It is never supposed to be included in the terms of any law providing for the imposition of taxes, however general it may be, not because it is exempt, in the sense in which that term is generally understood, but for the reason that in the nature of things it never was and never can be taxable. The power of taxation applies to the property of persons, either natural or corporate, within the jurisdiction of the government, and not to the government itself. Public property is nontaxable, not upon the theory of exemption, but for the obvious reason that there is no law, and practically never can be a law, making it taxable. Of course, a statute might be enacted including it within the operation of tax laws; but, since the government would have to pay the tax itself, such a law would be utterly useless."

The reasoning in the case last cited has peculiar application to the matter at bar. If property of the state or one of its political divisions held for public use is not taxable for the reasons suggested, then why should public property held by a municipality in its proprietary capacity be without the rule?

The effect of the taxation would be the same. In neither case would the government reap the slightest benefit. The distinction sought to be drawn between the two separate holdings, at least for taxable purposes, partakes more of the shadow than of the substance; and the logic that would exempt the one class and tax the other without resultant benefit to the public must fail of its own feebleness. Some text-writers hold that the private property of a city is in fact subject to taxation by itself, and authorities may be found to sustain such view. I do not think that the conclusions so reached can be upheld, and I prefer to base my conclusion upon authorities that sustain the contrary doctrine. In the case of People ex rel. Atkins v. City of Buffalo, 63 App. Div. 563, 68 N. Y. Supp. 409, 71 N. Y. Supp. 1145, it was said:

"While the tax law (Laws 1896, c. 908) now subjects to taxation the property of a municipal corporation not within its territorial limits (People ex rel. City of Amsterdam v. Hess, 157 N. Y. 42, 51 N. E. 410), yet no good reason exists for taxing its own property to pay a tax to itself, and the rule would seem to apply with equal force as regards such a tax to all property rights of the municipality, for no useful purpose would ordinarily be accomplished by such a course of procedure. And so it would seem equally abortive to require a municipal corporation, holding a prior tax lien or claim to property, to redeem from its own sales. Such a course would result in returning the tax which the tax sale proceeding was intended to collect, together with interest and other charges and additions thereto."

In Trustees of Public Schools v. City of Trenton, 30 N. J. Eq. 667, it appeared that the charter of the city of Trenton contained a provision preferring the lien for taxes over prior mortgages and other incumbrances; and it was held not applicable to mortgages made to the state to secure funds of the state invested in the mortgages. At page 681 of 30 N. J. Eq. the court say:

"'The immunity of the property of the state and of its political subdivisions from taxation does not result from a want of power in the Legislature to subject such property to taxation. The state may, if it sees fit, subject its property and the property owned by its municipal divisions to taxation in common with other property within its territory. But inasmuch as taxation of public property would necessarily involve other taxation for the payment of the taxes so laid, and thus the public would be taxing itself in order to raise money to pay over to itself, the inference of law is that the general language of statutes prescribing the property which shall be taxable is not applicable to the property of the state or its municipalities. Such property is, therefore, by implication excluded from the operation of laws imposing taxation, unless there is a clear expression of intent to include it."

In People ex rel. International Navigation Co. v. Barker, 153 N. Y. 98, 101, 47 N. E. 46, 47, the relator leased a pier from the city of New York. It erected sheds upon it as required by the lease which, on the expiration of the lease, were to become the property of the city. A tax was imposed upon the buildings. It was admitted by the city that, if the sheds belonged to it, they would be exempt from taxation. It was held that the tax was improperly imposed. The court said:

"The general rule, where the lease is silent upon the subject, imposes upon the lessor the obligation to pay the taxes upon the leased property, and, in this case, it would be a seeming incongruity, if the city, which is the taxing power, could assess its tenant for taxation."

In Dillon on Municipal Corporations (section 773), the author states:

"The general statutes of the state upon the subject of taxing property undoubtedly refer to private property, and not to that owned by the state; and, in view of the public nature of municipalities, and the purpose for which they are established, heretofore explained, the author is of opinion that such enactments do not, by implication, extend to any property owned by them—certainly to none owned by them for public uses."

See, also, People v. Doe, 36 Cal. 220–222; Low v. Lewis, 46 Cal. 550.

[6] Citations on this subject could be multiplied; but in my opinion those referred to sustain the conclusion that property of a municipality is not subject to taxation, whether it be employed for public uses or held in a proprietary capacity in trust for the public. The city, however, with knowledge that on the second Monday of January, 1910, it owned the lands which it sold to the relator in May of that year, undertook to assess it, not against itself as owner, but against fictitious persons who had no interest therein at the time. Whatever its power under the law to assess lands against unknown owners, it is clear that in the present instance its act was a mere evasion.

Assessment vacated. Settle order on notice.