Title Services, Inc. Tax Assessment Case.
Allegheny Center Associates Tax Assessment Case.

Argued March 21, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Francis A. Barry,* First Assistant County Solicitor, with him *James Victor Voss,* Assistant County Solicitor, and *Maurice Louik,* County Solicitor, for appellant.

*Frank L. Seamans,* with him *William H. Pentz,* and *Eckert, Seamans & Cherin,* for appellees.

OPINION BY MR. JUSTICE JONES, April 23, 1969:

These three appeals all involve the same question: when real estate is sold by a tax-exempt authority to a nonexempt corporation after the annual assessment date for real estate taxes, does the nonexempt corporation have to pay a pro-rata share of taxes for the year of sale, or does the exempt status continue throughout the taxable year?

In each of these three cases the Urban Redevelopment Authority of Allegheny County sold parcels of

land in the City of Pittsburgh to private corporations after the annual tax assessment date in Allegheny County (January 1) for the years in question. The Board of Property Assessment, Appeals and Review (Board) assessed the respective properties for that portion of the taxable year in which the corporations owned the properties. On appeal to the Court of Common Pleas of Allegheny County, Judge McKenna held that, if property is tax-exempt on January 1, it remains exempt for the entire year. The Board has appealed to our Court.

Both parties are agreed upon one principle which is well established both in our case law and in the case law of other jurisdictions: if property is taxable on the date of assessment, the tax for the entire year must be paid even if the property becomes tax-exempt during the year. *W. G. Halkett Co. v. Philadelphia*, 115 Pa. Superior Ct. 209, 210, 175 A. 299 (1934). The case presently before us involves the converse situation. The taxpayers argue that, if property taxable on the date of assessment remains taxable for the entire year, then logically it must follow that property which is exempt on the date of assessment must remain exempt for the entire year. The Board argues that this does not necessarily follow since tax exemptions must be strictly construed.

The Board relies on three cases which it claims have held that, if tax-exempt property becomes nonexempt during the taxable year, then a pro rata share of the assessed taxes must be paid from the date of conveyance. The case which first established this principle is *Moore v. Taylor*, 147 Pa. 481, 23 A. 768 (1892). We are not persuaded by this opinion. First, not only is this statement dictum in the *Moore* opinion, it is double dictum. The Court in *Moore* held first that the question whether the property could be taxed after the sale

from a tax-exempt church to a private citizen was not justiciable since the original taxpayer had not appealed the action of the board assessing the property and, therefore, since this action had not been attacked, the board's action became final. Furthermore, the plaintiff-taxpayer had no standing since the property had been assessed for taxation before he purchased it. Second, we are unmoved by the *Moore* opinion because the vast weight of authority holds to the contrary.[1] The other two cases cited by the Board merely rely on the *Moore* opinion. Again, however, this recitation of the rule set forth in *Moore* is dictum in both cases. *Philadelphia v. Pennsylvania Co. for the Instruction of the Blind*, 214 Pa. 138, 63 A. 420 (1906), involved the converse situation where a charity was seeking tax-exemption for the second half of the fiscal year on a parcel of land which was taxable on the assessment date. In *Appeal of Anthony M. Forsthoffer Post 389*, 12 Pa. D. & C. 211 (Phila. C. P. 1929), the court held that no tax was owed on the property in question for reasons which are not here relevant. In conclusion, we consider none of these three cases relied upon by the Board as convincing authority in support of the Board's position.

There is, however, one case which directly supports the taxpayers' position. In *General State Authority v. Township of Haverford*, 46 Del. Cty. R. 89 (1958), the property in question was owned by the tax-exempt authority on the date of assessment, but *prior* to the date of assessment, the property was owned by private citizens. The taxing authority attempted to assess the property for the portion of the fiscal year in which the property was not owned by the authority. The Delaware County Court of Common Pleas held: "Since,

---

[1] See note 2 *infra*.

under the admitted facts and the law, plaintiff's property was exempt from taxation at the time when the assessment was levied, it was exempt during the entire year. If it be thought unjust or unreasonable that the property should escape taxation for the two months prior to the conveyance, it must be noted that the rule cuts both ways, i.e., if the property had been taxable at the time when the assessment was levied, it would have been taxable for the entire year, despite a subsequent conveyance to the plaintiff." (46 Del. Cty. R. at 92)

The well-nigh universal rule in this country is that the tax status and value of property is set for the entire fiscal year on the assessment date. "The taxable status of property ordinarily becomes fixed as of the date designated by law as assessment day, and, *unless expressly provided to the contrary*, no taxes can legally be assessed for a particular year unless the conditions requisite to liability exist on that day." (Emphasis added) (16 McQuillin, Municipal Corporations, §44.105, at 333-334) The law is clear in this Commonwealth that, if property is taxable on the assessment date, it remains taxable for the entire year and that the value of property is fixed for the entire year on the assessment date regardless of whether the property appreciates or depreciates in value after that date. *Hendel Appeal*, 403 Pa. 635, 170 A. 2d 109 (1961). We think that if the orderly and uniform system of assessment contemplated by the legislature is to prevail, then it must follow that if property is tax exempt on the day of assessment, it remains exempt for the entire year.

The vast weight of authority supports the position we have taken in this appeal. The Board cites no cases outside this Commonwealth, and our research has uncovered none, which support its position. Instead, all

authorities we have found support the taxpayers' contention.[2]

The Board has not advanced any policy reasons why we should adopt its position. We are well aware that the taxpayers in this case are receiving a windfall. On the other hand, the taxing authority would receive a windfall if we adopted the Board's position since it would be receiving tax revenues it had not anticipated. For this reason, holding that the property remains exempt for the entire year is in no way detrimental to the taxing authority since it levied sufficient taxes on the assessment date to meet its fiscal needs for the entire year. We must conclude that it is only equitable that the Board cannot have it both ways: if property taxable on the date of assessment remains taxable for the entire year, then property which is exempt on the assessment date must remain exempt for the entire year.

Orders affirmed. Appellant pay costs.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I disagree with the majority when it concludes that a nonexempt corporation which buys real estate from a tax exempt authority is not liable for its pro-rata share of the taxes for the year of the sale. I believe that the only equitable view is that the taxpayer must

---

[2] *Board of Cty. Commissioners of Creek Cty. Okl. v. Seber*, 130 F. 2d 663, 670 (10th Cir. 1942), *aff'd*, 318 U.S. 705, 87 L. E. 1094 (1943); *Clearwater Timber Co. v. Nez Perce Cty.*, 155 Fed. 633, 639 (C.C.D. Idaho 1907); *State Tax Comm. v. Armco Steel Corp.*, 226 Md. 533, 174 A. 2d 327 (1961); *Jabert Operating Corp. v. City of Newark*, 16 N. J. Superior Ct. 505, 85 A. 2d 216 (1951); *New Orleans Bank & Trust Co. v. City of New Orleans*, 176 La. 946, 147 So. 42 (1933); *People ex rel. Hollock v. Purdy*, 72 N. Y. Misc. 122, 130 N. Y. Supp. 1077 (1911); 2 Cooley, Taxation, §712, at 1500 (4th Ed. 1924); 51 Am. Jur., Taxes, §538, at 539; 84 C.J.S., Taxation, §237, at 456.

pay his share of the taxes; otherwise our basic proposition that all should contribute their proper share of the public expenditures becomes a nullity as to those who fortuitously purchase real estate as this appellant did on January 11, January 14, and April 4, 1966, from an instrumentality which was *statutorily exempted* from the requirement to pay taxes.

The majority is able to cite only one lower court decision, *General State Authority v. Township of Haverford*, 46 Del. Cty. Rep. 89 (1958), which supports its theory. In my view that opinion is not controlling. The public policy reasons for disallowing the continued exemption of the property clearly overcome the precedent value of this lone case. Further, I believe *Moore v. Taylor*, 147 Pa. 481, 23 Atl. 768 (1892), which represented the unanimous view of seven members of this Court, is entitled to more weight than the view of one nisi prius judge; the language there employed contains an excellent exposition of the policy reasons for taxing these properties. In upholding the power of the local taxing board to tax similar property, the *Moore* Court said "we are of the opinion that what was done was within the scope of the general powers delegated to the board. Its duty is to see that every parcel of real estate is assessed, and, when not legally exempt from taxation, charged with its due proportion of the public burdens. . . . What equity therefore has he [the purchaser of exempt property] to acquire and enjoy property, for nearly two thirds of the year [here 354, 351 and 272 days] without contributing in the shape of taxes his just share of the public burdens? The effect of relieving him would be to increase the burdens of other taxpayers, contrary to the principle that underlies our system of taxation, viz.: that every one shall contribute his just proportion of the public expenses." Id. at 484, 23 Atl. at 769.

The majority argues that since property which is taxable on the date of assessment remains taxable throughout the entire year, even if sold to a tax exempt organization, the converse should also be true. However the policy reasons behind the maintenance of taxable status for the entire year are not present for the alternative proposition. When a taxing authority sets its tax rate for the tax year, it should not be forced to speculate on the amount of the taxable property extant at the beginning of the year which may become exempt at some later date; in the name of fiscal responsibility, the taxing authority must be assured of continued taxability of all taxable property until such time as a new tax rate is set.

However, no such argument would require a property which is tax exempt at the beginning of the year from changing to a taxable status. This would merely increase the revenue to the taxing authority, a result which I am sure would not contradict public policy. At best this additional reserve could be used to keep the budget in balance or to pay for unexpected expenditures; at worst, it could be carried over as a surplus to reduce the amount of taxes required in the next year. It certainly could not be termed a "windfall" in the sense that the taxing authority (which represents all the taxpayers) is not entitled to it. It is abundantly clear to me that in the interests of fairness, all property owners who do not enjoy tax exempt status should pay their fair share of the taxes. If any windfall should be prohibited, it is the one which would permit a property owner to avoid taxes by buying from a tax exempt organization.

In addition this view comports with our general notion that all exemptions from the normal burdens of taxation should be construed most strictly. The impact of the tax exemptions which have been statutorily

established should never be extended beyond the actual reason for the exemption. Therefore I dissent from the majority's decision.

Mr. Justice COHEN and Mr. Justice O'BRIEN join in this dissenting opinion.