422 A.2d 889

**Joseph GRAMBY and Mel G. Rabin**

**v.**

**Randall COBB and Paul Clinite, Appellants.**

Superior Court of Pennsylvania.

Argued March 17, 1980.

Filed Nov. 21, 1980.

James W. Greenlee, Philadelphia, for appellants.

Richard A. Sprague, Philadelphia, for appellees.

Before HESTER, WICKERSHAM and LIPEZ, JJ.

HESTER, Judge:

Presently before the court is an appeal from the Final Decree of the lower court dismissing appellants' exceptions [1] to the lower court's Adjudication and Decree Nisi wherein the lower court concluded: (a) that the agreement between the parties is lawful, binding and enforceable; (b) that appellant Cobb is enjoined and restrained from engaging in prizefighting or other contact sports in violation of his agreement with appellants; and (c) appellant Cobb is enjoined and restrained from entering into any contracts with third persons in violation of the agreement.

We reverse.

The within action in equity was submitted to the Chancellor as a case stated, and on Friday, December 9, 1977, counsel for all parties agreed that following legal arguments, the Chancellor should adjudicate same as a final hearing rather than a preliminary hearing, and that the question of damages, if necessary, would be reserved for a subsequent hearing. Following legal arguments, the lower court issued its Adjudication and Decree Nisi in accordance with the above understanding. Following the timely filing of exceptions and their subsequent dismissal, this appeal followed.

The facts may be briefly summarized as follows: On or about January 26, 1976, appellees and appellant Randall Cobb executed a written Agreement whereby appellees agreed to serve as co–managers for appellant Cobb, and Cobb agreed to render his services as a prizefighter exclusively for the appellees for a period of ten years. Further contained in said Agreement is a provision where Cobb as the fighter and appellees as co–managers would divide evenly (fifty–fifty) all moneys derived from the fight game and related activities. The co–managers further agreed to pay

1. The Final Decree dated March 14, 1978 dismissing appellants' exceptions contained two amendments which were incorporated in the lower court's original findings of fact, to–wit, that neither appellee had a managerial license as of January 26, 1976 in Pennsylvania and appellee Gramby first obtained his managerial license on September 12, 1977.

all training, traveling and other related expenses. There was no provision for a minimum salary to be paid by the co–managers to the fighter Cobb. In addition, at paragraph 9 of said Agreement, it is provided that: "Any and all disputes arising under this contract shall be decided by the State Law of Pennsylvania, and that should court action be necessary to enforce any of the terms of this contract, that the proper forum for such action shall be the State Courts of Pennsylvania . . . ."

Cobb began his training and subsequently engaged in six prizefights, winning all by knockout; although some of the fights were not arranged, supervised or handled by the appellees. Thereafter, Cobb advised the appellees that he was not bound by the terms of the ten–year personal service contract and that same was null and void. Thus, appellees brought the instant action in equity in an attempt to enforce the Agreement or, stated differently, to enjoin Cobb from fighting in violation of same.

Appellant Cobb contends that the agreement is void *ab initio* for the reason that it is in direct violation of the Pennsylvania Athletic Code, the Commission established thereunder, and its rules and regulations. The appellees contend and the lower court agreed, that the Pennsylvania Athletic Code is inapplicable to the parties' case at bar since same applies only to prizefights physically held in Pennsylvania.

We agree with appellant Cobb that the Pennsylvania Athletic Code is controlling and therefore both non–compliance and violations of the Code as demonstrated in and by the Agreement dated January 26, 1976 renders same unenforceable and void *ab initio*.

■ The Pennsylvania Athletic Code, 1955 August 31, P.L. 531, Art. I, § 101, 4 P.S. § 30.101 is the law of the Commonwealth as same applies to:

"... permitting and regulating wrestling and boxing contests and exhibitions; requiring licenses and permits; conferring powers and imposing duties upon the State

Athletic Commission; providing for the granting, suspension, and revocation of licenses and permits issued by the Commission; preserving the rights of existing licensees and permittees; prescribing penalties, fines, forfeitures and misdemeanors; requiring bonds and insurance; creating a Medical Advisory Board; providing for rules and regulations; and making appropriations."

As such, we find that the scope and jurisdiction of the Pennsylvania Athletic Code is more expansive and encompassing than merely as a regulator of boxing and wrestling matches or exhibitions which may be conducted, held or given within the Commonwealth. Although the Act specifically grants exclusive control and jurisdiction over boxing matches held in Pennsylvania (4 P.S. 30.201) to the Pennsylvania Athletic Commission, a reading of same clearly demonstrates that its original jurisdiction and authority is not limited thereto. For example, Article III deals with "Licenses and Permits"; Article IV in the establishment of a Medical Advisory Board; Article V with Contracts between managers, promoters and professional boxers; Article VI with the posting of surety bonds; and Articles VII, VIII and IX, with hearings, penalties and miscellaneous provisions.

Specifically, Article V provides:

§ 30.501 Commission control of contracts

*The Commission is hereby granted the right to promulgate rules and regulations governing the form and content of all contracts entered into between* or among promoters and foreign co–promoters and professional boxers or wrestlers and managers and all contracts between managers and professional boxers and wrestlers, all of which contracts shall be in writing.

§ 30.502 Contracts subject to law

Every contract subject to the provisions of *this article* shall contain the following clause:

"*This agreement is subject to the provisions of the Pennsylvania Athletic Code and to the rules and regulations of the Pennsylvania Athletic Commission,* and to any future amendments of either of them".

§ 30.503 Provisions in contracts between managers and professional boxers or wrestlers

Every contract between a manager and a professional boxer or wrestler shall contain provisions governing its *duration, division of the boxer's or wrestler's purses and the minimum sum to be guaranteed annually to the boxer or wrestler by the manager.*

Each contract shall further provide that the contract shall be automatically terminated if the license of either party is revoked by the Commission or if the manager fails to renew his license within thirty (30) days after the expiration thereof. If the license of either party is suspended, the contract shall not be binding upon the other party during the period of such suspension.

§ 30.504 Approval of contracts

*No contract between a manager and a professional boxer or wrestler shall be legally valid and binding, until both parties thereto have appeared before the Commission and have received its approval of the contract endorsed thereon.* (Emphasis added).

Additionally, § 203 of the Pennsylvania Athletic Commission Regulations provides in pertinent part:

"No contract between a manager and a boxer shall be approved by the Commission for a contractual period *exceeding three (3) years* except by the unanimous vote of the Commission." (Emphasis added).

Therefore it can easily be ascertained that the Pennsylvania Athletic Code, the Commission formulated thereunder, and its Rules and Regulations are the law of the Commonwealth of Pennsylvania as mandated by our Legislature.

■ In that regard, we must apply the general rule that an agreement between parties which violates a provision of a statute, or which cannot be effectively performed without violating said statute, is illegal, unenforceable, and void *ab initio.* See *Dippel v. Brunozzi,* 365 Pa. 264, 74 A.2d 112 (1950). As our Supreme Court in *Dippel* reiterated:

Where a contract is found to be against public policy "it cannot, under any circumstances, be made the basis of a cause of action. The law when appealed to will have nothing to do with it, but will leave the parties just in the condition in which it finds them. If they have fully executed their unlawful contract, the law will not disturb them in the possession of what each has acquired under it. If one has executed in whole or in part, the law turns a deaf ear when he pleads for its aid to compel the other to do as much...." *City of Pittsburg v. Goshorn*, 230 Pa. 212, 227, 79 A. 505, 510.

█ Since there is no dispute that the terms of the agreement violates specific provisions contained in the *Code* and its Rules and Regulations, and since we conclude that the *Code*, its Commission and its Rules and Regulations promulgated thereunder applies to more than just prizefights which may be staged in Pennsylvania, we are compelled to reverse the Final Decree of the lower court and declare that the agreement executed by the parties and dated January 26, 1976 is unenforceable and void *ab initio*.

Final decree reversed.

LIPEZ, J., concurs in the result.