# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Springfield      :
Hospital      :
Folio No. 42-00-06625-01      :
     :   No. 191 C.D. 2017
Appeal of: Prospect Crozer, LLC      :   Argued: December 7, 2017


BEFORE:     HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
SENIOR JUDGE PELLEGRINI            FILED: February 13, 2018


Prospect Crozer, LLC (Prospect) appeals from an order of the Court of Common Pleas of Delaware County (trial court) granting a petition to enforce the trial court's previous order approving a payment in lieu of a tax agreement and ordering that the tax status of Springfield Hospital be changed to taxable non-exempt effective July 1, 2016. For the following reasons, we affirm.

## I.

### A.

Springfield Hospital is located on 11+ acres of land at 190 West Sproul Road, Delaware County (property), within the taxing districts of Springfield School District and Springfield Township (together, Taxing Authorities). "Springfield Hospital" was a non-profit corporation organized and operated as a purely public charity for hospital purposes; as such, the property itself has held tax-exempt status since approximately 1960.

In 1992, Springfield Hospital was in the process of expanding its health campus to include medical office buildings, a sports club and a parking garage, which prompted the Taxing Authorities to appeal the property's tax-exempt status. The Delaware County Board of Assessment Appeals (Board) issued a notice removing the property's tax-exempt status and fixing the assessment at $500,000. Springfield Hospital appealed to the trial court contending that the property remained wholly exempt because the entire tract of land was a necessary part of an institution of purely public charity.

The parties resolved the tax assessment appeal pursuant to a payment in lieu of taxes (PILOT) agreement,[1] which the trial court approved by order dated May 31, 1994 (1994 PILOT Order). Paragraph 4 of the trial court's 1994 PILOT Order provides, in pertinent part:

> After the final Certificate of Occupancy is granted by Springfield Township to Springfield Hospital for the new medical health campus, Springfield Hospital, its successors and assigns, shall not be subject to real estate tax on the existing hospital building **so long as** the existing hospital building is used solely for hospital purposes by Springfield Hospital **or is used solely for hospital purposes by an entity which is exempt from federal tax under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended**.

---

[1] The named parties to the PILOT agreement are Springfield Hospital, Springfield School District, Springfield Township, the Board, and Delaware County.

(Reproduced Record (R.R.) at 14a.) (Emphasis added.) The 1994 PILOT Order also states that it is "binding on the successors and assigns of Springfield Hospital." (R.R. at 15a.)

Crozer-Keystone Health System (CKHS), an entity exempt from federal tax under Section 501(c)(3) of the Internal Revenue Code, subsequently acquired the property and continued to use it solely for hospital purposes. All parties agreed that the requirements of the 1994 PILOT Order continued to be satisfied and, therefore, the property remained tax-exempt while it was owned and operated by CKHS.

**B.**

On January 8, 2016, CKHS was sold to Prospect by way of an asset purchase agreement dated January 8, 2016, with the transfer effective July 1, 2016. Prospect is a for-profit entity but continues to operate Springfield Hospital and uses the hospital building solely for hospital purposes.

Given the sale of the property to a for-profit entity, the Taxing Authorities believed the property no longer qualified as tax exempt. Springfield School District issued to Prospect a 2016 school real estate tax bill for the property dated July 1, 2016, in the amount of $433,956.15, based upon the property's current real estate tax assessment of $13,810,935.00. On July 13, 2016, after this tax bill was sent, the Taxing Authorities sent a letter to the Delaware County Tax Assessment Office (Assessment Office) alerting it of the sale of the property to a for-profit entity and requesting that the Assessment Office update the county tax records to reflect the property's taxable status as of July 1, 2016, the date the transfer of the property

3

became effective. Prospect disputed the Taxing Authorities' interpretation of the 1994 PILOT Order and the property's tax status, and the Assessment Office did not change the property's tax status.

On July 26, 2016, the Taxing Authorities filed a statutory annual appeal with the Board challenging the property's tax-exempt status for tax year 2017. On November 15, 2016, the Board granted the appeal and issued a decision stripping the property of its tax-exempt status as of January 1, 2017.

Prior to issuance of the Board's decision, the Taxing Authorities also filed with the trial court a petition to enforce the 1994 PILOT Order. The Taxing Authorities asserted that pursuant to the plain language of the order, the property is no longer exempt from real estate taxes because it was transferred to a for-profit entity subject to federal income tax, and the 1994 PILOT Order requires an immediate change in the property's tax status as of the date of transfer, July 1, 2016. Prospect countered that under the first clause of the 1994 PILOT Order, the property remains tax exempt because the hospital building is still being and will continue to be used as Springfield Hospital for hospital purposes, and it does not matter that Prospect is a for-profit entity. In the alternative, Prospect argued that if the property is now taxable, the common law tax assessment day rule mandates that the change in taxable status cannot be instituted until the next fiscal year following that change, which would be January 1, 2017.

The trial court granted the petition to enforce and ordered that the property's status be changed on the tax rolls to taxable non-exempt effective July 1,

2016. The trial court also ordered the Assessment Office to update its roll to reflect the property's taxable non-exempt status.

In an opinion issued pursuant to Pa. R.A.P. 1925(a), the trial court noted that the clear and unequivocal intent of the parties, based upon the plain language of the 1994 PILOT Order, was for the property to remain tax exempt only so long as the entity that operated it as a hospital held tax-exempt status. That ceased when CKHS transferred its assets to Prospect, a for-profit entity, thus entitling the Taxing Authorities to the relief they sought through the petition to enforce. The trial court further noted that while the property may still be used for hospital purposes as "Springfield Hospital," that use is determined by Prospect, a for-profit entity and, therefore, neither condition in paragraph 4 of the 1994 PILOT Order remains in effect. The trial court reasoned that the tax assessment day rule is not applicable here because the change in tax status of the property is not the result of any reassessment but pursuant to the explicit terms of the 1994 PILOT Order. It held that Prospect was to pay taxes once the conditions in paragraph 4 were no longer met, meaning when the property changed hands on July 1, 2016.

Prospect moved for reconsideration given the intervening decision of the Board, asking the trial court to clarify its order to make clear that the property remains tax exempt until January 1, 2017, in conformity with the Board's decision. By order dated December 27, 2016, the trial court granted the motion for reconsideration and agreed to clarify its previous order in light of the Board's recent ruling. However, by order dated February 3, 2017, the trial court "denied" Prospect's motion for reconsideration, noting that its previous order is clear and speaks for itself

5

without need for clarification. Prospect then filed a timely appeal to this Court challenging the trial court's November 30, 2016 order.

On November 10, 2017, Prospect filed what is titled as an application for leave to file supplemental brief. The application requests that we vacate the trial court order and remand, without reaching the merits, for reconsideration by a judge outside of the Court of Common Pleas of Delaware County. The application alleges that the entire Delaware County bench is recused from cases involving Prospect, and the Supreme Court appointed a visiting judge to a separate case in the trial court involving Prospect, because a sitting Delaware County judge also serves on the Board of Directors of the Crozer-Keystone Community Foundation (Foundation), a foundation directly related to Prospect. We issued an order treating the application as a motion to remand and directing that it be heard with the merits of the appeal.

## II.

### A.

We first address Prospect's argument that the trial court's order granting the petition to enforce should be vacated and the case remanded and assigned to a visiting judge due to potential bias because an unnamed judge on the Court of Common Pleas of Delaware County also serves on the Foundation's Board. Prospect argues that every member of the Delaware County bench should be recused because of this conflict of interest and the petition to enforce should be re-heard by a visiting judge. Prospect contends that while the circumstances for the recusal existed at the time the trial court issued the enforcement order, Prospect did not learn of the potential conflict until October 17, 2017.

6

In essence, Prospect's motion to remand is a petition for recusal. As our Supreme Court recently reiterated, "[t]he case law in this Commonwealth is clear and of long standing; it requires a party seeking recusal or disqualification to raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred." *Lomas v. Kravitz*, 170 A.3d 380, 389 (Pa. 2017) (quoting *Goodheart v. Casey*, 565 A.2d 757 (Pa. 1989)). The earliest possible moment means "when the party knows of the facts that form the basis for a motion to recuse." *Lomas*, 170 A.3d at 390 (citations omitted).

Here, Prospect did not file its motion for remand until November 10, 2017, a year after the trial court granted the petition to enforce, nine months after filing its appeal to this Court and after this appeal was fully briefed. In support of its motion to remand, Prospect cites to a June 29, 2017 letter from the Delaware County Court Administrator to counsel in the case *In the Matter of Acquisition of Assets of Crozer Keystone Health System*, docketed in the trial court at 0342-1997. Prospect is an interested party in that case and the Court Administrator's letter specifies that recusal was sought in that matter because a member of the Court of Common Pleas of Delaware County serves on the Foundation's Board. Therefore, despite its claim to the contrary, Prospect knew of the facts that form the basis for its motion by June 29, 2017, but did not file the motion until more than four months later. Because Prospect did not present the recusal issue at the earliest possible moment, the underlying basis for the motion to remand is time-barred and waived. *See Lomas*, 170 A.3d at 390 (citing *In re Lokuta*, 11 A.3d 427, 437 (Pa. 2011)); *Goodheart*, 565 A.2d at 763-64.

7

Even if Prospect's motion is not waived as time-barred, it still must be denied. Prospect has failed to allege any facts, let alone come forward with any evidence, tending to show bias, prejudice or unfairness on the part of the trial court judge which would necessitate recusal. *See Commonwealth v. Druce*, 848 A.2d 104, 108 (Pa. 2004); *Reilly v. Southeastern Pennsylvania Transportation Authority*, 489 A.2d 1291, 1300 (Pa. 1985). Importantly, there is no evidence in the record even identifying the trial court judge who heard the petition to enforce as the individual with the potential conflict. Prospect cites to *In the Interest of McFall*, 617 A.2d 707, 713 (Pa. 1992), for the proposition that the tribunal must avoid even the appearance of bias and there is no need to find actual prejudice. However, this statement is taken out of context and Prospect's bald allegations fail to establish even the appearance of bias by the trial court judge. Given all of the above, Prospect's motion to remand is denied and we now turn to the merits.

### III.

### A.

Prospect has abandoned its argument that the property remains wholly tax exempt – because the building continues to be used solely for hospital purposes as Springfield Hospital – because this issue is not listed in its questions presented section nor is it addressed in Prospect's brief to this Court. The issue before us is when did the property's change in tax-exempt status become effective – upon the date of transfer of the property, July 1, 2016, or not until the following tax year.

Prospect cites to *Appeal of Title Services, Inc.*, 252 A.2d 585 (Pa. 1969), and the common law tax assessment day rule in support of its argument that the tax

status of the property was set for the entire fiscal year as of the date of the 2016 assessment. The tax assessment day rule is premised upon the need for an orderly and uniform system of assessment, and provides that if property is taxable on the date of assessment, then tax must be paid for the entire year even if the property becomes tax exempt during that year. *Id.* at 587. Likewise, "if property is tax exempt on the day of assessment, it remains exempt for the entire year." *Id.* Here, it is undisputed that the property was not sold by CKHS, a tax-exempt entity, to Prospect, a non-exempt corporation, until after the 2016 annual assessment date for real estate taxes had passed. Therefore, Prospect argues that the property's tax status could not be changed to taxable non-exempt until tax year 2017.

The Taxing Authorities argue that the 1978 amendments to the General County Assessment Law[2] (GCAL) abrogated the tax assessment day rule and, therefore, the rule does not apply to the trial court's 1994 PILOT Order or the enforcement petition. In support of this argument, they cite to *In re Jubilee Ministries International*, 2 A.3d 706 (Pa. Cmwlth.), *appeal denied*, 14 A.3d 830 (Pa. 2010), which involved a challenge to the effective date of tax-exempt status for several properties in Lawrence County, a county of the fifth class. The properties initially were not tax-exempt on the date of assessment. However, part-way through the fiscal year that Jubilee Ministries acquired the properties, it began using them for church-related purposes and sought tax-exempt status as of the date of transfer. Notably, we held "that the [t]ax [a]ssessment [d]ay [r]ule was abrogated by the 1978 amendments to the General County Assessment Law and the Fourth to Eighth Class

---

[2] Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5020-1 to 5020-602.

County Assessment Law.[3]" *Id.* at 709. Accordingly, we affirmed the decision of the trial court finding that the properties met the requirements for tax exemption as of the date of transfer and the board was required to grant tax-exempt status effective that date.

Unlike Lawrence County, Delaware County is a county of the second class and, therefore, is subject to the Second Class County Assessment Law[4] rather than the Fourth to Eighth Class County Assessment Law. We addressed the importance of this distinction when considering the applicability of the tax assessment day rule in *Global Links v. Keystone Oaks School District*, 115 A.3d 418 (Pa. Cmwlth. 2015), a case involving property located in Allegheny County, which is also a county of the second class. We explained that nothing in Section 10 of the Second Class County Assessment Law, 72 P.S. § 5452.10, allows mid-year additions and revisions to the tax roll like Section 505(b) of the GCAL. *Global Links*, 115 A.3d at 421. We held that because of this inconsistency in the statutes, Section 505(b) of the GCAL does not apply to counties of the second class. Therefore, just as in *Global Links*, here, *In re Jubilee Ministries International* is inapplicable and the tax assessment day rule is still valid. This means that for purpose of the tax rolls, the property remained exempt until January 1, 2017.

---

[3] Act of May 21, 1943, P.L. 571, as *amended*, 72 P.S. §§ 5453.101 – 5453.706.

[4] Act of June 21, 1939, P.L. 626, *as amended*, 72 P.S. §§ 5452.1 – 5452.20.

**B.**

However, this does not end our inquiry as we must still assess the impact of the 1994 PILOT Order that would require Prospect to pay an amount equivalent to the tax based on the assessed value calculated from July 1, 2016, until the property was placed back on the tax rolls on January 1, 2017.

The Taxing Authorities assert that the trial court correctly interpreted the order and found that the parties intended the property to be tax exempt only "so long as" it was used solely for hospital purposes by a tax-exempt entity, meaning during and up to the date these conditions ceased to be met. Essentially, they argue that the 1994 PILOT Order is self-executing and Prospect is required to pay the assessed value of the property under the contract when it acquired ownership of the property on July 1, 2016.

Prospect argues that the history of the case and the terms of the 1994 PILOT Order itself demonstrate that it was negotiated to address the issue of exemption, not when taxes could be collected. The trial court's goal in interpreting a contract is to ascertain the intent of the parties. *Municipal Authority of Borough of Edgeworth v. Borough of Ambridge Water Authority*, 936 A.2d 538, 544 n.10 (Pa. Cmwlth. 2007) (citation omitted). "If the contractual terms are clear and unambiguous on their face, then such terms are deemed to be the best reflection of the intent of the parties. If, however, the contractual terms are ambiguous, then resort to extrinsic evidence to ascertain their meaning is proper." *Commonwealth v. UPMC*, 129 A.3d 441, 463 (Pa. 2015) (citations omitted).

11

Here, the trial court found that the language of the 1994 PILOT Order, specifically, paragraph 4, is unambiguous and that the parties intended the subject property to remain tax exempt only so long as any entity that operated it as a hospital was exempt from federal taxation. That condition was no longer in effect when the property was transferred from CKHS to Prospect on July 1, 2016, and the trial court held that through the 1994 PILOT Order, Prospect's predecessors agreed to pay the tax effective as of that date. The 1994 PILOT Order also does not violate the tax assessment day rule because the parties to that order agreed to settle the tax status of the property as well as when the property became subject to payment of an amount equivalent to the tax.

## C.

Even though its predecessor in title agreed to the provision, Prospect contends that the trial court was without power to enforce the PILOT Agreement because parties cannot agree to conditions which violate the law, and such agreements are "illegal, unenforceable, and void *ab initio*" because the effect of ordering it to pay taxes would violate the tax assessment day rule. This argument is without merit for a number of reasons.

First, Prospect has waived the issue of whether Section 8841 of the CCAL purportedly prohibits the trial court from enforcing the PILOT Agreement. This issue was not raised in Prospect's "Answer and Affirmative Defenses" to the Taxing Authorities' petition to enforce (R.R. at 58a), nor was it contained in Prospect's Rule 1925(b) Statement. (R.R. at 409.) As our Supreme Court stated in *Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011):

12

Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) [S]tatement, when so ordered; any issues not raised in a Rule 1925(b) [S]tatement will be deemed waived; the courts lack the authority to countenance deviations from [Rule 1925(b)'s] terms; Rule 1925(b)'s] provisions are not subject to ad hoc exceptions or selective enforcement; appellants and their counsel are responsible for complying with [Rule 1925(b)'s] requirements; Rule 1925[(b)] violations may be raised by the appellate court *sua sponte*, and the Rule applies notwithstanding an appellee's request not to enforce it[.] ... We yet again repeat the principle first stated in [*Commonwealth v. Lord*, 719 A.2d 306, 308 (Pa. 1998),] that must be applied here: '[I]n order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a [Rule 1925(b) statement]. Any issues not raised in a [Rule] 1925(b) [S]tatement will be deemed waived.' [*Id*.] at 309.

*See also FP Willow Ridge Associates, L.P. v. Allen Township*, 2017 WL 2871038 (Pa.Cmwlth. 2017).[5]

Second, what is being enforced is not just the parties' PILOT Agreement but the trial court's order adopting the PILOT Agreement – the 1994 PILOT Order. Absent a showing that the order required a party to do something illegal, the trial court's order has to be enforced. An agreement to pay taxes if the property is not being used for tax-exempt purposes is not illegal.

---

[5] Nowhere in the record can we even find a hint of this issue being raised. This is not surprising because, at the trial court level, Prospect argued that the 1994 PILOT Order permitted it to enjoy the benefit of tax exemption so long as Prospect – a for-profit entity – chose to keep the fictitious name of "Springfield Hospital" and owned and operated a brick-and-mortar building which used the name "Springfield Hospital."

Third, the PILOT Agreement itself is not illegal because it was specifically authorized by the General Assembly. The General Assembly empowered taxing authorities and property owners to enter into voluntary PILOT agreements through its statutory requirement that each provision in the CCAL be read *in para materia* with the Institutions of Purely Public Charity Act ("Act 55"). 53 Pa.C.S. § 8812(c). It was the General Assembly's intent to encourage institutions of purely public charity and taxing authorities to enter into voluntary PILOT agreements or maintain existing or continuing PILOT agreements. *See* 10 P.S. § 372(a)(7). Moreover, to the extent that any provision in the CCAL is found to be inconsistent with a provision in Act 55, the General Assembly specifically directed that the Act 55 provision supersedes the inconsistent provision in the CCAL. *See* 53 Pa.C.S. § 8812(c).

Finally, neither of the cases Prospect relies on to establish that PILOT agreements are illegal are applicable to the facts of this case. In *Gramby v. Cobb*, 422 A.2d 889 (Pa. Super. 1980), a ten-year contract between a professional boxer and manager was governed by the Pennsylvania Athletic Code (PAC). The PAC expressly provided that no contract between professional boxers and managers could be legally valid and binding unless the parties appeared before the State Athletic Commission (Commission) and received its approval of the contract, and any contract for a term in excess of three years required the unanimous vote of approval of the Commission to be legally valid. Since the PAC governed the ten-year contract, the court in *Gramby* found that because the parties had not obtained the unanimous approval of the Commission, the contract did not satisfy the specific statutory requirements for legal validity and, as such, the contract was unenforceable. *Id.* at

14

892. In this case, unlike the PAC, there is no requirement mandating that PILOT agreements adhere to any specific provisions in the CCAL to be legally valid and enforceable.

Prospect's reliance on *School District of City of Monessen v. Farnham & Pfile Co. (Farnham)*, 878 A.2d 142 (Pa. Cmwlth. 2005), is also misplaced. In *Farnham*, the property owner informed the taxing authorities that it desired to have its property declared a subzone under the newly codified Keystone Opportunity Zone Act (KOZ Act). The court noted that the KOZ Act required taxing authorities to abate 100% of the real property tax of deteriorated property in an area designated as a subzone. *Id.* at 144. In November 1998, the taxing authorities and property owner entered into a PILOT agreement whereby the property owner made annual payments in lieu of taxes purportedly for municipal services as a subzone under the KOZ Act. After obtaining the PILOT agreement, the taxing authorities then applied to the applicable government agency to have the property designated as a subzone.

In *Farnham* we found that the PILOT agreement was unenforceable because it caused payments to be made for the cost of municipal services – i.e., taxes – in direct contradiction of the KOZ Act, which provided that each political subdivision "shall by ordinance or resolution abate 100% of the real property taxation" on a property designated as a subzone. *Id.* at 151.

Unlike the KOZ Act in *Farnham*, which specifically banned the type of arrangement at the heart of the parties' PILOT agreement, nothing in the CCAL requires 100% real estate tax abatement to a for-profit hospital in Delaware County.

15

Nor is there any other statutory provision banning the terms of the PILOT Agreement and 1994 PILOT Order.

Accordingly, the order of the trial court granting the Taxing Authorities' Petition to Enforce the 1994 PILOT Order is affirmed.

_____
DAN PELLEGRINI, Senior Judge

Judge Fizzano Cannon did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of Springfield     :
Hospital     :
Folio No. 42-00-06625-01     :
    :
Appeal of:  Prospect Crozer, LLC     :  No. 191 C.D. 2017

**O R D E R**

AND NOW, this 13th day of February, 2018, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is affirmed.

DAN PELLEGRINI, Senior Judge

In Re: Appeal of Springfield     :
Hospital     :
Folio No. 42-00-06625-01     :
    :   No. 191 C.D. 2017
Appeal of: Prospect Crozer, LLC     :   Argued: December 7, 2017


BEFORE:     HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


CONCURRING/DISSENTING OPINION
BY JUDGE COVEY                    FILED: February 13, 2018


I concur with the Majority's ruling that Prospect Crozer LLC's (Prospect) motion for remand was time-barred and waived; that the tax assessment day rule was not generally abrogated and, thus, applies in this case; and, pursuant to the 1994 payment in lieu of taxes order (PILOT Order), the property lost its tax-exempt status as of July 1, 2016. However, I respectfully dissent from the Majority's conclusion that the 1994 PILOT Order authorized the parties to modify the law relative to when Prospect became liable for the property's taxes.

The Majority declares that: Prospect waived any argument that Section 8841 of the Consolidated County Assessment Law (CCAL), 53 Pa.C.S. § 8841,[1]

---

[1] Delaware County is a Second Class A county. *See* Taxing Auth. Br. at 20 n.8. Second Class A counties became governed by the CCAL effective January 1, 2011.

Section 8841(a) of the CCAL requires a county assessment office to annually prepare and submit to the Delaware County Board of Assessment Appeals, before July 1st, an assessment roll specifying which properties are subject to local taxation and which are exempt therefrom. Section 8841(c) of the CCAL provides, in pertinent part:

> The county assessment office is authorized to make additions and revisions to the assessment roll at any time in the year to change the assessments of existing properties pursuant to [S]ection 8817 [of the CCAL] (relating to changes in assessed valuation) . . . . All additions

applies; the underlying PILOT agreement is not illegal because the trial court and the General Assembly authorized it; and, *Gramby v. Cobb*, 422 A.2d 889 (Pa. Super. 1980) and *School District of City of Monessen v. Farnham & Pfile Co., Inc.*, 878 A.2d 142, 152 (Pa. Cmwlth. 2005), are distinguishable.

The fact that Prospect did not specifically raise the applicability of Section 8841 of the CCAL is of no moment. Prospect has consistently argued the applicability of the tax assessment day rule. *See* Prospect's Ans. to Enforce Petition ¶¶ 16-18, 21-22, 24-26, 35, 47, and Affirmative Defenses ¶¶ 3-4; Prospect's Statement of Errors Complained of on Appeal ¶¶ 2(a)-(f); Prospect's Designation of Contents of Reproduced Record ¶¶ 2A-F. Section 8841 of the CCAL only serves to modify the tax assessment day rule in specific circumstances not applicable in this case. Accordingly, whether or not Prospect waived any argument as to the applicability of Section 8841 of CCAL is irrelevant in this appeal.

The Majority also states that since "[a]n agreement to pay taxes if the property is not being used for tax-exempt purposes is not illegal," "the trial court's [PILOT O]rder [adopting the PILOT agreement] has to be enforced." Maj. Op. at 13. Paragraph 4 of the trial court's PILOT Order provides, in relevant part:

> Springfield Hospital, its successors and assigns, shall not be subject to real estate tax on the existing hospital building so long as the existing hospital building is used solely for hospital purposes by Springfield Hospital or is used solely for hospital purposes by an entity which is exempt from

and revisions shall be a supplement to the assessment roll for levy and collection of taxes for the tax year for which the assessment roll was originally prepared.

53 Pa.C.S. § 8841(c). Section 8817(a) of the CCAL expressly limits tax assessment roll additions and revisions to "when a parcel of land is subdivided into smaller parcels or when improvements are made to real property or existing improvements are removed from real property or are destroyed." 53 Pa.C.S. § 8817(a). Mid-year modifications are also authorized under CCAL Sections 8813 (for residential construction), 8814 (for real estate subject to sewer connection ban orders), 8815 (for catastrophic loss), and 8816 (for clerical and mathematical errors).

federal tax under Section 501(c)(3) of the Internal Revenue Code of 1986,[2] as amended.

Reproduced Record at 14a. Clearly, the PILOT Order addressed the property's tax exempt status and in no way expressly modified the tax assessment day rule or declared when taxes would be due. The trial court's decision did not affect when the taxing districts of Springfield School District and Springfield Township (collectively, Taxing Authorities) could legally tax the property.

"[P]ursuant to the Pennsylvania Constitution, the power to determine which property shall be subject to taxation and which shall be exempt from taxation is, subject to certain limitations, vested exclusively in the General Assembly." *Monessen*, 878 A.2d at 152. Section 15 of the Local Tax Collection Law[3] makes it unlawful for a tax collector to receive payments for taxes that were not duly assessed. 72 P.S. § 5511.15. The property's taxability "is determined at the time of the assessment, and changes during the course of a year . . . will only become effective for tax purposes in the following year." *In re Borough of Riegelsville from Bucks Cty. Bd. of Assessment & Revision of Taxes*, 979 A.2d 399, 403 (Pa. Cmwlth. 2009); *see also Appeal of Title Servs., Inc.,* 252 A.2d 585 (Pa. 1969);[4] *Glob. Links v. Keystone Oaks Sch. Dist.*, 115 A.3d 418 (Pa. Cmwlth. 2015); *In re Appeal of Sports & Exhibition Auth. of Allegheny Cty.*, 789 A.2d 316 (Pa. Cmwlth. 2001). This Court has proclaimed:

[2] 26 U.S.C. § 501.

[3] Act of May 25, 1946, P.L. 1050.

[4] As the Majority stated, *Title Services, Inc.* was superseded only as it pertains to Section 505(b) of the General County Assessment Law (GCAL), 72 P.S. § 5020.505(b), and Section 701(a.1) of the Fourth to Eighth Class County Law, 72 P.S. § 5453.701(a.1). *See Atl. City Elec. Co v. United Sch. Dist.*, 780 A.2d 766 (Pa. Cmwlth. 2001). The tax assessment day rule was not generally abrogated, so it still applies unless the applicable county assessment law specifies otherwise. *See Glob. Links v. Keystone Oaks Sch. Dist.*, 115 A.3d 418 (Pa. Cmwlth. 2015) (wherein the Second Class County Assessment Law specifies that the tax assessment day rule applies except in cases of catastrophic loss).

> **Liability for the payment of taxes in Pennsylvania arises not by reason of a contractual relationship between the taxing body and the taxable, but strictly by operation of law, and the law is well established that taxes can be collected only as provided by statute**. *In the Matter of Appointment of Viewers, . . .* 178 A.2d 149 ([Pa.] 1961). Moreover, pursuant to the Pennsylvania Constitution, the power to determine which property shall be subject to taxation and which shall be exempt from taxation is, subject to certain limitations, **vested exclusively in the General Assembly**. *S[w.] Del[.] C[ty.] Mun[.] Auth[.] v. Aston T[wp.], . . .* 198 A.2d 867 ([Pa.] 1964); *. . . State Emp[s.]' Ret[.] Sys[.] v. Dauphin C[ty.], . . .* 6 A.2d 870 ([Pa.] 1939); *Radnor T[wp.] Sch[.] Dist[.] v. Valley Forge Military Acad[.] Found[.],* 59 Pa. D[.] & C[.]2d 768 (C.P.Del. 1970).
>
> In light of the aforesaid legal principles, it follows that the [Taxing Authorities were] without power or authority to collect real property taxes from [Prospect] *. . . via* enforcement of the 199[4] PILOT [Order].

*Monessen*, 878 A.2d at 152 (emphasis added; footnote omitted). Accordingly, while the trial court properly determined that the property's tax-exempt *status* ended upon Prospect's purchase, under the tax assessment day rule, the property could not be *taxed* until January 1, 2017.

The Majority cites no legal authority for its conclusion that the property's effective tax date is July 1, 2016, but rather interprets the trial court's PILOT Order adopting the PILOT agreement. However, despite the trial court's adoption of the PILOT agreement, "[i]t is well settled that a contract which violates a statute is illegal and will not be enforced." *Robinson Coal Co. v. Goodall*, 72 A.3d 685, 690 (Pa. Super. 2013) (quoting *Rittenhouse v. Barclay White Inc.,* 625 A.2d 1208, 1211 (Pa. Super. 1993)). Therefore, to the extent that the trial court's enforcement order exceeded its authority and violated the tax assessment day rule, it is unenforceable.

The Majority further rules that the PILOT agreement was not illegal because the Institutions of Purely Public Charity Act's (Act 55)[5] under which the PILOT agreement was executed is intended to encourage charitable institutions to voluntarily enter into, maintain and continue PILOT agreements, and Act 55 expressly supersedes the CCAL.

Indeed, Section 2(7) of Act 55 states, in pertinent part: "It is the intent of [Act 55] to encourage financially secure institutions of purely public charity to enter into voluntary agreements or maintain existing or continuing agreements for the purpose of defraying some of the cost of various local government services." 10 P.S. § 372(7). Section 7(d) of Act 55 further declares: "Nothing in [Act 55] shall be construed to affect, impair, terminate or supersede any . . . agreement . . . in effect on or before [November 26, 1997] . . . ." 10 P.S. § 377(d). Finally, Section 8812(c) of the CCAL specifies that "[e]ach provision of [the CCAL] is to be read in para materia with [Act 55] . . . , and to the extent that a provision of this chapter is inconsistent with [Act 55], the provision is superseded by [Act 55]." 53 Pa.C.S. § 8812(c). Accordingly, there is no question that PILOT agreements supersede the CCAL's provisions when an inconsistency arises. However, neither the CCAL nor Act 55 specify that once the terms of a PILOT agreement or a PILOT Order are no longer met, the tax assessment day rule is to be disregarded and the subject property is to be taxed beginning on the day its tax-exempt status changes mid-year. Thus, Act 55 does not support the Majority's position that the General Assembly authorized the Taxing Authorities to immediately tax Prospect as of the July 1, 2016, without first undergoing an assessment and without modification of the assessment roll.

Finally, the Majority deemed *Gramby* and *Monessen* inapposite. However, Prospect cited those cases for the conclusion that when an agreement

---

[5] Act of November 26, 1997, P.L. 508, 10 P.S. §§ 371-385.

cannot be performed without violating the law, it is unenforceable. Notwithstanding that the facts of those cases may differ from the case at bar, the conclusions for which they were cited are accurate representations of the current law. Despite that the *Gramby* Court was reviewing whether a boxing agreement violated the Pennsylvania Athletic Code,[6] it nevertheless accurately pronounced as a "general rule" that unlawful agreements are unenforceable. *Gramby*, 422 A.2d at 892. Further, although the *Monessen* Court was deciding whether property taxes were waived under the Keystone Opportunity Zone (KOZ) Act,[7] it cited to "well established" law that "taxes can be collected only as provided by statute." *Monessen*, 878 A.2d at 152. Any factual distinction between *Gramby*, *Monessen* and the instant matter is immaterial, and the Majority cites no law to the contrary.

For the above reasons, I would reverse the trial court's order granting the Taxing Authorities' Petition to Enforce the 1994 PILOT Order only insofar as it requires Prospect to pay taxes beginning July 1, 2016.

_____
ANNE E. COVEY, Judge

---

[6] Act of August 31, 1955, P.L. 531, repealed by Section 3101 of the Act of July 1, 1989, P.L. 136.

[7] Act of October 6, 1998, P.L. 705, *as amended*, 73 P.S. §§ 820.101-820.1309.