J-A01039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BARBARA ROSMARIN, EXECUTRIX FOR THE ESTATE OF GENE BARCLAY ROSMARIN | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | |
| | : | No. 1132 EDA 2017 |
| LAKPA YANJI SHERPA | : : | |

Appeal from the Decree March 3, 2017
In the Court of Common Pleas of Bucks County
Orphans' Court at No(s):  2014-E0441

BEFORE:   LAZARUS, J., OTT, J., and PLATT*, J.

MEMORANDUM BY OTT, J.:                          **FILED AUGUST 20, 2018**

Barbara Rosmarin[1], Executrix of the Estate of Gene Barclay Rosmarin (Executrix), appeals from the decree entered March 3, 2017, in the Court of Common Pleas of Bucks County, that denied her petition and "order to show cause" filed against Lakpa Yanji Sherpa, wife of Gene Barclay Rosmarin (Decedent). Specifically, the orphans' court's decree denied Executrix's "Petition to (1) Strike Lakpa Sherpa's Claim to be Recognized as Decedent's Surviving Spouse because the Alleged Marriage between Lakpa Sherpa and the Decedent is Fraudulent and therefore Void under 23 Pa.C.S.A. § 3304(a)(3)[,] and (2) Strike Lakpa Sherpa's Claim Against Decedent's Estate

_____

* Retired Senior Judge assigned to the Superior Court.

[1] In the orphans' court, Rosmarin's surname is Nolan.

Pursuant to 20 Pa.C.S.A. § 2507(3) because Decedent's Last Will and Testament was Drafted in Contemplation of his Future Marriage to Lakpa Sherpa," as well as Executrix's "Order to Show Cause," requesting the orphans' court to strike Lakpa Sherpa's spousal share claim pursuant to the doctrine of unclean hands.[2] In this appeal, Executrix presents multiple issues, discussed below, in support of her contention that the orphans' court erred in its determination that Sherpa is entitled to pursue her spousal share of Decedent's estate. We affirm on the basis of the orphans' court's sound opinions, filed March 7, 2017, and May 26, 2017.

The orphans' court has fully set forth the facts and procedural history of this case in both opinions, and we need not reiterate the background herein. We simply state that Executrix is the ex-wife of Decedent. Decedent died testate on June 10, 2014, having executed a Will, dated April 9, 1998. Following his 1996 divorce from Rosmarin, Decedent married Sherpa in Nepal in 2008, and he then returned to the United States. On January 22, 2014, Sherpa entered the United States as a lawful permanent resident. Decedent did not execute another will after his marriage to Sherpa.

---

[2] In the orphans' court, Executrix withdrew her attempt to strike Sherpa's spousal share claim pursuant to 20 Pa.C.S. § 2507(3). *See* Orphans' Court Opinion, 3/7/2017, at 2.

On August 8, 2014, Executrix was granted Letters Testamentary. Sherpa filed a spousal election against Decedent's Will on January 18, 2014. Subsequently, Executrix filed the above-mentioned petition and order to show cause. Following entry of the orphans' court's March 3, 2017 decree, Executrix filed this appeal.

Executrix presents nine claims in her brief, as follows:

1. Is it an abuse of discretion to go against the weight of the evidence to disregard authenticated, admitted and highly probative documentary evidence and to accept as true self-serving testimony from an interested party with an established history of making material misrepresentations?

2. Is it an abuse of discretion/reversible error for a court to erroneously hold that there was no testimony establishing the prima facie case when admissible testimony from an uninterested, non-party witness establishing the prima facie case was relied upon by the court and cited to in its decision?

3. Is it an abuse of discretion to refuse to admit affidavits submitted to United States Citizenship and Immigration Services by a party witness and her cousin, who is also a witness, under the doctrine of completeness and Pa.R.E. 106 when the affidavits that were highly probative and exposed material misrepresentations made under oath during the pendency of this litigation?

4. Is it an abuse of discretion for a court of equity to disregard the doctrine of unclean hands to grant relief to a deceitful party that advanced its position by lying about material facts to influence the outcome of the matter in controversy that affects the relationship of the parties?

5. Is it an abuse of discretion for a court of equity to refuse to invoke the doctrine of unclean hands when it is shown by

- 3 -

documentary evidence, sworn statements and judicial admissions that a party to the litigation lied to United States Citizenship and Immigration Services, committed perjury and suborned perjury regarding elements central to the matter in controversy?

6. Does 23 Pa.C.S.A. § 3304(a)(3) authorize the orphans' court to annul a void marriage fraudulently undertaken solely to defraud United States Citizenship and Immigration Services based upon the parties' lack of capacity to consent to a marriage that is void for illegality.

7. Is a marriage void where both of the parties lacked capacity to consent to the marriage because it was entered into solely for an illegal purpose in express violation of federal statute?

8. Does a court's use of dicta from *In Interest Of Miller*, 301 Pa. Super. 511, 448 A.2d 25 (1982) to constrain the clear and unequivocal language of 23 Pa.C.S.A. § 3304(a)(3) violate principles of statutory interpretation?

9. Can a state court decide whether to annul a marriage that is void for illegality if it violates a federal statute?

Executrix's Brief at 5-7.[3]

Our standard of review is well settled:

When an appellant challenges a decree entered by the [o]rphans' [c]ourt, our standard of review "requires that we be deferential to the findings of the [o]rphans' [c]ourt."

[We] must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [o]rphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same

_____

[3] Executrix timely complied with the order of the orphans' court to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

- 4 -

> deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Staico*, 143 A.3d 983, 987 (Pa. Super. 2016) (citations omitted).

The orphans' court has thoroughly addressed the claims raised in this appeal in its March 7, 2017 opinion filed in conjunction with the March 3, 2017 decree, and its May 26, 2017 Pa.R.A.P. 1925(a) opinion. **See** Orphans' Court Opinion, 3/7/2017 (rejecting Executrix's theories (1) that the Decedent and Sherpa's marriage was void pursuant to 23 Pa.C.S. § 3304(a)(3); (2) that the marriage should be deemed void *ab initio* due to the fact it was an allegedly illegal contract that violates the federal immigration law codified at 8 U.S.C. § 1325(c); and (3) that Sherpa should be denied her spousal share due to unclean hands). **See also** Orphans' Court Opinion, 5/26/2017 (finding (1) certain issues raised in Executrix's concise statement were too vague to warrant review; (2) the orphans' court properly denied Executrix's request to submit affidavits of Sherpa's mother, daughter, cousin and the Decedent because the affidavits could not be properly authenticated and the affidavits themselves constituted inadmissible hearsay; and (3) the orphans' court properly sustained Sherpa's objection to the testimony of Lynne Jones, Decedent's cousin, where no hearsay exception applied.

Based on our review of the orphans' court's opinion, we find the orphans' court properly rejected Executrix's claims, and further discussion is unnecessary, in all but one respect. Specifically, we address the following contention:

> [T]he Orphans' Court passed on ruling whether a marriage should be deemed void because it was an illegal agreement to circumvent federal immigration law. The Court reasoned that ruling on this basis would infringe on the federal judiciary's exclusive jurisdiction over immigration matters. This too was reversible error.
>
> ****
>
> It was an error of law for the [o]rphans' [c]ourt, which had the exclusive power to annul marriages in Pennsylvania, to pass on whether the agreement to marry in order to circumvent immigration laws violated a statute and is therefore an illegal agreement that is void *ab initio*.

Executrix's Brief, at 58-59.

In the orphans' court, Executrix claimed Decedent and Sherpa had committed marriage fraud under 8 U.S.C. § 1325(c), which provides:

> Any individual who knowingly enters into a marriage for the purpose of evading any provision of the immigration laws shall be imprisoned for not more than 5 years, or fined not more than $250,000, or both.

8 U.S.C. § 1325(c).

The orphans' court rejected this argument, explaining:

> In assessing [Executrix's] argument that Decedent and [Sherpa's] marriage should be deemed void because it was an illegal agreement to circumvent federal immigration law, initially we find

that [Executrix's] invocation of 8 U.S.C.A. § 1325(c) as a basis for invalidating the marriage between Decedent and [Sherpa] raises jurisdictional concerns. Federal immigration law vests the federal district courts with exclusive jurisdiction of all determinations under 8 U.S.C.A. § 1325(c),[4] which is in line with the general principle that "[i]mmigration is a matter of exclusive federal jurisdiction." *See* 8 U.S.C.A. § 1329 (West); *Ruiz v. Unemployment Comp. Bd. of Review*, 911 A.2d 600, 603 (Pa. Commw. Ct. 2006).

---

[4] It should be noted that if we were to accept [Executrix's] theory that the marriage between Decedent and [Sherpa] was nothing more than a contract between them to violate U.S.C.A. § 1325(c), then we would thereby in practicality be making the determination that Decedent and [Sherpa] did in fact violate U.S.C.A. § 1325(c). Further, we also note that as a criminal statute, such a finding of culpability under U.S.C.A. § 1325(c) would require a higher burden of proof of being proven beyond a reasonable doubt. *See United States v. Islam*, 418 F.3d 1125, 1127 (10th Cir. 2005) (On appeal the issue was "whether a reasonable jury could have found Defendant guilty of marriage fraud beyond a reasonable doubt.").

---

We believe, therefore, that ruling on this basis in the present case would infringe on the federal judiciary's exclusive jurisdiction over immigration matters.[5]

---

[5] In this context [Executrix] almost exclusively cites to federal cases, the majority of which involve prosecution by the United States government. *See* [Executrix's] Proposed Findings of Fact and Conclusions of Law as to Lakpa Sherpa's Unclean Hands and Void Marriage, pp. 42-44.

---

Orphans' Court Opinion, 3/7/2017, at 12. We agree with the orphans' court's analysis.

Contrary to the argument of Executrix, the orphans' court did not "pass" on the issue of whether Decedent and Sherpa committed marriage fraud under 8 U.S.C. § 1325(c). Rather, the orphans' court recognized it had no authority to question the federal immigration decision to allow Sherpa to enter this country as Decedent's wife. **See** Orphans' Court Opinion, 3/7/2017, at 3 (stating that that Sherpa was admitted as a lawful permanent resident "after going through the federal immigration process, which included a review of all of the relevant marriage documents").

The record discloses the following facts.[4] In September, 2008, Decedent and Sherpa married in Katmandu, Nepal. On November 30, 2008, Decedent filed a United States Citizenship and Immigration Services (USCIS) form, "I-130, Petition for Alien Relative," for a visa for Sherpa, as his wife. On April 27, 2009, USCIS notified Decedent the petition was approved, and had been forwarded to the Department of State's National Visa Center (NVC) for completion of the visa processing steps. Thereafter, Sherpa was determined

_____

[4] **See** Exhibits E-32, "Immigration Papers," and E-33, "Approval Notice."

to be inadmissible under the Immigration and Nationality Act (INA),[5] but not on the grounds that she was not a spouse. Sherpa filed for a waiver of grounds of inadmissibility, which was ultimately approved in May, 2013, and in January, 2014, she arrived and was admitted to the United States as Decedent's wife for lawful permanent residence.

Executrix asked the orphans' court to conclude the marriage of Decedent and Sherpa was void as illegal in violation of 8 U.S.C. § 1325(c), regarding marriage fraud for the purpose of evading United States immigration laws. The orphans' court properly declined to do so.

Immigration is the subject of federal, not state, law. The INA allows citizens to file Form I-130 to petition for immediate relative status on behalf of their alien spouses so that the alien spouses may immigrate to the United States. *See* 8 U.S.C. § 1154(a)(1)(A)(i). The term "immediate relatives" includes the "children, spouses, and parents of a citizen of the United States." § 1151(b)(2)(A)(i). Here, USCIS approved the I-130 petition filed by Decedent for Sherpa, as his wife.

Section 1325(c), upon which Executrix relies, is a federal criminal provision, and Section 1329 expressly grants to United States district courts

---

[5] *See* 8 U.S.C. § 1101 *et seq*.

jurisdiction of "all causes brought by the United States that arise under the provisions of this title" and provides that "[i]t shall be the duty of the United States attorney of the proper district to prosecute every such suit when brought by the United States."  8 U.S.C. § 1329.  To the extent that Executrix seeks to invalidate the Decedent and Sherpa's marriage on the basis of Section 1325(c), she is requesting the orphans' court to interfere with a "binding" decision of USCIS, and indirectly intrude into the jurisdiction of the federal court regarding a Section 1325(c) issue.  *See Ruiz v. Unemployment Comp. Bd. Of Review, supra,* 911 A.2d at 603 (holding "where the USCIS denies or revokes an alien's work authorization, the determination is binding on the states and can be assailed only before a federal agency or in a federal court.").[6, 7]

_____

[6] We note that "[t]his Court is not bound by decisions of the Commonwealth Court[,]" however, we may consider their decisions as persuasive authority when appropriate. *Petow v. Warehime*, 996 A.2d 1083, 1089 n.1 (Pa. Super. 2010) (quotation omitted).

[7] In *Ruiz*, the claimant sought unemployment benefits and contended the expiration of his green card did not render him legally unavailable for work during the period February 18 to March 18, 2006.  The claimant argued that because he had applied twice to USCIS for renewal of his green card before it expired, he should not have been denied benefits available under Pennsylvania's Unemployment Compensation Law.  *Id.*, 911 A.2d at 603.  The *Ruiz* Court found the USCIS determinations electing not to process two green card renewal requests filed by the claimant were "*binding*." *Id.* at 605

While we acknowledge the difficult facts of this case and that equity principles apply in orphans' court proceedings, we agree with the orphans' court that "ruling on this basis in the present case would infringe on the federal judiciary's exclusive jurisdiction over immigration matters." Orphans' Court Opinion, 3/7/2017, at 12. A determination that the marriage of Decedent and Sherpa was an illegal contract to circumvent immigration law would impermissibly make a finding that is strictly within federal jurisdiction.

Decree affirmed.[8]

Judge Lazarus joins this memorandum.

Judge Platt files a dissenting memorandum.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/18

---

(emphasis supplied). In addition, the claimant's green card automatically expired on February 2, 2006. **Id.** The **Ruiz** Court concluded the claimant was ineligible for unemployment compensation benefits because he "could not accept employment, and employers could not hire, recruit, or continue to employ him during the period he sought benefits." **Id.**

[8] In the event of further proceedings, the parties are directed to attach copies of the orphans' court's March 7, 2017, and May 26, 2017 opinions to this memorandum.

Filed 4/22/2017 10:46:00 AM Superior Court Eastern District
1132 EDA 2017

### IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
### ORPHANS' COURT DIVISION

In re: ESTATE OF GENE B. ROSMARIN, :
        Deceased

      :   No. 2014-0441

      :

## DECREE

AND NOW, this  3rd  day of **March, 2017**, upon consideration of Petitioner Barbara Nolan's Petition to (1) Strike Lakpa Sherpa's Claim to be Recognized as Decedent's Surviving Spouse because the Alleged Marriage between Lakpa Sherpa and Decedent is Fraudulent and therefore Void under 23 Pa.C.S.A. § 3304(a)(3)[] and (2) Strike Lakpa Sherpa's Claim Against Decedent's Estate Pursuant to 20 Pa.C.S.A. § 2507(3) because Decedent's Last Will and Testament was Drafted in Contemplation of his Future Marriage to Lakpa Sherpa, and Petitioner's "Order to Show Cause" requesting that the Court strike Respondent Lakpa Sherpa's spousal share claim pursuant to the doctrine of unclean hands, and the responses thereto, and after an extensive hearing in this matter, it is hereby ORDERED and DECREED that said Petition and the relief sought in Petitioner's "Order to Show Cause" are DENIED and DISMISSED. Respondent Lakpa Sherpa shall be entitled to pursue her spousal share of Decedent's estate.

BY THE COURT:

_____
C. THEODORE FRITSCH, JR., ADMN. J.

N.B. It is your responsibility
to notify all interested parties
of the above action.

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

In re: ESTATE OF GENE B. ROSMARIN, :
     Deceased                   :   No. 2014-0441
                                :

## MEMORANDUM OPINION

Currently before the Court are two separate requests for relief seeking to strike the spousal share claim filed by Respondent Lapka Sherpa (hereinafter sometimes referred to as "Respondent") against the estate of the Decedent Gene B. Rosmarin (hereinafter sometimes referred to as "Decedent"), which were filed by the Petitioner Barbara Nolan (hereinafter sometimes referred to as "Petitioner") on January 30, 2015, and June 22, 2015. Petitioner is the ex-wife of the Decedent and the executrix of his estate. Petitioner now seeks to have the Court either: (1) annul the marriage between Decedent and his second-wife, Respondent Lakpa Sherpa, on the basis of Petitioner's allegations that the marriage between Decedent and Respondent was a "sham" in order to perpetrate immigration fraud or (2) strike Respondent's claim for her elective share of the Decedent's estate under the doctrine of unclean hands.

## BACKGROUND

On January 30, 2015, Petitioner filed a document entitled: Petition to (1) Strike Lakpa Sherpa's Claim to be Recognized as Decedent's Surviving Spouse because the Alleged Marriage between Lakpa Sherpa and Decedent is Fraudulent and therefore Void under 23 Pa.C.S.A. § 3304(a)(3); and (2) Strike Lakpa Sherpa's Claim Against Decedent's Estate Pursuant to 20 Pa.C.S.A. § 2507(3) because Decedent's Last Will and Testament was Drafted in Contemplation of his Future Marriage to Lakpa Sherpa. On June 22, 2015, Petitioner filed a document titled "Order to Show Cause" in which she requested that the Court strike Respondent's spousal share

claim with prejudice pursuant to her allegation that Respondent is in violation of the doctrine of unclean hands. We held an eight-day hearing in this matter, with substantive hearing dates spanning from September 29, 2015, through October 26, 2016. On January 30, 2017, the parties submitted proposed findings of fact and conclusions of law. In "Petitioner's Proposed Findings of Fact and Conclusions of Law as to Lakpa Sherpa's Unclean Hands and Void Marriage," Petitioner indicated that she was withdrawing her attempt to strike Respondent's spousal share claim pursuant to 20 Pa.C.S.A. § 2507(3).

Decedent Gene B. Rosmarin died on June 10, 2014. Decedent died with a Last Will and Testament dated April 9, 1998, which appointed his ex-wife, Petitioner Barbara Nolan, executrix of his estate and left her the entirety of the rest, residue, and remainder of his estate. *See* Decedent's Last Will and Testament dated April 9, 1998. Decedent's Last Will and Testament was drafted after his divorce from Petitioner, the Petitioner and Decedent having been divorced in 1996.

After Decedent's divorce from Petitioner, Decedent engaged in a long-term relationship with a Nepalese woman, Chopka Sherpa. N.T. 10/26/16, pp. 118-119; N.T. 9/28/16, p. 144. Decedent and Chopka Sherpa remained in a relationship for several years, until eventually Chopka no longer wished to pursue a romantic relationship with Decedent. N.T. 9/28/16, pp. 148-154. In 2002, Decedent met Respondent Lakpa Sherpa while he was on a trip to Nepal with Chopka. N.T. 7/15/16, p. 4. From the time they met, Respondent and Decedent stayed in touch, with Chopka primarily helping to facilitate their communications. N.T. 7/15/16, pp. 9-10. Testimony was elicited that Decedent often expressed feelings of being lonely and depressed, and he was in search of companionship. N.T. 9/28/16, pp. 53-54, 86, 168-169; N.T. 9/29/15, p. 126, 161-162. Decedent wanted the comfort and security that he associated with marriage. N.T.

2

9/29/15, p. 126. Eventually, Decedent expressed to his mother and his sister his desire to marry Respondent. N.T. 9/29/15, pp. 126, 161-162. However, Decedent's children were not made aware of Respondent, nor Decedent's intention to remarry. N.T. 9/28/16, pp. 126-127, N.T. 9/29/15, pp. 211, 219-220. In describing the progression of her relationship with Decedent, Respondent stated: "he loved me and I had small kids[,] he was very good to the kids and he loves me and cared for me[,] [s]o I decided to get married to him." N.T. 7/15/16, pp. 10-11. On September 29, 2008, while Decedent was in Nepal, Respondent and Decedent entered into a marriage. N.T. 7/15/16, p. 11. Respondent and Decedent "[f]irst [] got married traditionally in [Nepalese] culture and then after that [] went to the government office and got [their] marriage registered." N.T. 7/15/16, p. 11. A copy of Decedent and Respondent's marriage certificate was entered as an exhibit at trial. N.T. 5/6/16, pp. 27-28.

On January 22, 2014, after going through the federal immigration process, which included a review of all of the relevant marriage documents, Respondent entered the United States as a lawful permanent resident. N.T. 7/15/16, pp. 44-46. Respondent currently maintains her status as a lawful permanent resident. N.T. 7/15/16, pp. 44-46. While living in the United States during the time Decedent was alive, Respondent did not reside with Decedent on a continual basis, and would spend a majority of the week in New York, where she was able to find work. N.T. 5/6/16, pp. 31-47; N.T. 7/15/16, p. 47. However, Decedent did hold Respondent out to be his wife, naming her as a beneficiary for his work benefits, and expressing his desire to be with her to his doctor. N.T. 7/15/16, pp. 66-69; *see* Exhibits E-33 and E-35. Although Decedent's tax preparer stated Decedent had once mentioned the prospect of divorce to him, from the time of Respondent's arrival, neither Decedent nor Respondent took any affirmative steps towards obtaining a divorce. N.T. 9/29/15, pp. 19, 25.

3

On May 10, 2014, Decedent suffered a serious accident that resulted in his hospitalization and his placement on life support. N.T. 7/14/16, p. 22, N.T. 9/29/15, pp. 219-220. Petitioner and Decedent and Petitioner's children claim they were not aware of Respondent's marriage to Decedent until her involvement at the hospital following Decedent's accident. N.T. 9/28/16, pp. 126-127, N.T. 9/29/15, pp. 211, 219-220. However, Decedent had a somewhat estranged and distant relationship in recent years with his children and Petitioner. N.T. 9/28/16, pp. 147-159; N.T. 7/13/16, pp. 97-98; N.T. 10/26/16, p. 119. Ultimately, the hospital recognized Respondent as the legal wife of Decedent, and as such granted her decision-making authority. N.T. 7/15/16, p. 87, *see* Exhibit E-35. On June 10, 2014, Decedent passed away.

On August 8, 2014, Petitioner was granted Letters Testamentary in regard to Decedent's estate. *See* August 8, 2014, Decision and Decree issued by the Register of Wills, Docket No. 2014-01469. Respondent filed her spousal election against Decedent's Will on November 18, 2014. Thereafter, Petitioner initiated the present attempts to disallow Respondent's spousal share claim.

## DISCUSSION

We will discuss below both of Petitioner's theories of relief for striking Respondent's spousal share claim; to wit, the marriage being void pursuant to 23 Pa.C.S.A. § 3304(a)(3) and Respondent's conduct being in violation of the doctrine of unclean hands.

At the outset, it is necessary to address the meaning of a marriage under Pennsylvania law, and whether what transpired between Decedent and Respondent can be recognized as a prima facie marriage. "Marriage in Pennsylvania is a civil contract by which a man and a woman take each other for husband and wife." *In re Manfredi's Estate*, 399 Pa. 285, 291, 159 A.2d 697, 700 (1960). "The validity of a marriage is to be determined by the law of the place

4

where it was celebrated; if valid there, it is valid everywhere."[1] *Phillips v. Gregg*, 1840 WL 3833, at *1 (Pa. 1840). In the present case, the record reflects that Decedent and Respondent entered into a marriage in Nepal, and their marriage was recognized as valid by the Nepalese government, as evidenced by their marriage certificate. N.T. 5/6/16, pp. 26-28; *see* Exhibit E-16. The record establishes that Decedent and Respondent received a marriage certificate from the Nepalese government and had a ceremonial wedding pursuant to Nepalese and Buddhist customs.[2] N.T. 5/6/16, pp. 26-28; N.T. 7/15/16, p. 11; *see* Exhibit E-16. Accordingly, based upon the previously stated principles and the evidence of record, we find that a prima facie marriage between Decedent and Respondent has been established. We now must look at the ramifications of this determination.

Pursuant to 20 Pa. Stat. and Cons. Stat. Ann. § 2507(3):

Wills shall be modified upon the occurrence of any of the following circumstances, among others:

> **(3) Marriage.**--If the testator marries after making a will, the surviving spouse shall receive the share of the estate to which he would have been entitled had the testator died intestate, unless the will shall give him a greater share or unless it appears from the will that the will was made in contemplation of marriage to the surviving spouse.

---

[1] We do recognize that there is an exception to this general principle when a foreign marriage is repugnant to the public policy of the Commonwealth of Pennsylvania. *See Com. v. Custer*, 145 Pa. Super. 535, 540, 21 A.2d 524, 526 (1941) ("An exception to the general rule, however, is ordinarily made in the case of marriages repugnant to the public policy of the domicile of the parties, in respect of polygamy, incest, or miscegenation, or otherwise contrary to its positive laws.").

[2] Pennsylvania now only recognizes ceremonial marriages for any marriage entered into in the Commonwealth after January 1, 2005, and "[a] ceremonial marriage is a wedding or marriage performed by a religious or civil authority with the usual or customary ceremony or formalities." *In re Manfredi's Estate*, 399 Pa. 285, 291, 159 A.2d 697, 700 (1960); *see Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd.*, 114 A.3d 27, 32-33 (Pa. Commw. Ct. 2015) ("The legislature [] amended Section 1103 of the Marriage Law, 23 Pa.C.S. § 1103, effective January 24, 2005, statutorily abolishing common law marriages in Pennsylvania. Section 1103 provides: 'No common-law marriage contracted after January 1, 2005, shall be valid. Nothing in this part shall be deemed or taken to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005, invalid." (quoting 23 Pa.C.S. § 1103)); *see also In re Manfredi's Estate*, 399 Pa. 285, 291, 159 A.2d 697, 700 (1960) ("There [used to be] two kinds of marriage: (1) ceremonial; and (2) common law.").

'20 Pa. Stat. and Cons. Stat. Ann. § 2507(3) (West). Under the laws of intestate succession, as set

forth under 20 Pa. Stat. and Cons. Stat. Ann. § 2102(4):

> The intestate share of a decedent's surviving spouse is:

>> (4) If there are surviving issue of the decedent one or more of whom are not issue of the surviving spouse, one-half of the intestate estate.

20 Pa. Stat. and Cons. Stat. Ann. § 2102(4) (West). Further, under 20 Pa. Stat. and Cons. Stat.

Ann. § 2203:

> **(a) Property subject to election.**--Except as provided in subsection (c), when a married person domiciled in this Commonwealth dies, his surviving spouse has a right to an elective share of one-third of the following property:
>> (1) Property passing from the decedent by will or intestacy.
>> (2) Income or use for the remaining life of the spouse of property conveyed by the decedent during the marriage to the extent that the decedent at the time of his death had the use of the property or an interest in or power to withdraw the income thereof.
>> (3) Property conveyed by the decedent during his lifetime to the extent that the decedent at the time of his death had a power to revoke the conveyance or to consume, invade or dispose of the principal for his own benefit.
>> (4) Property conveyed by the decedent during the marriage to himself and another or others with right of survivorship to the extent of any interest in the property that the decedent had the power at the time of his death unilaterally to convey absolutely or in fee.
>> (5) Survivorship rights conveyed to a beneficiary of an annuity contract to the extent it was purchased by the decedent during the marriage and the decedent was receiving annuity payments therefrom at the time of his death.
>> (6) Property conveyed by the decedent during the marriage and within one year of his death to the extent that the aggregate amount so conveyed to each donee exceeds $3,000, valued at the time of conveyance.
>
> In construing this subsection, a power in the decedent to withdraw income or principal, or a power in any person whose interest is not adverse to the decedent to distribute to or use for the benefit of the decedent any income or principal, shall be deemed to be a power in the decedent to withdraw so much of the income or principal as is subject to such power, even though such income or principal may be distributed only for support or other particular purpose or only in limited periodic amounts.
>
> **(b) Property not subject to election.**--The provisions of subsection (a) shall not be construed to include any of the following except to the extent that they pass as part of the decedent's estate to his personal representative, heirs, legatees or devisees:
>> (1) Any conveyance made with the express consent or joinder of the surviving spouse.

6

(2) The proceeds of insurance, including accidental death benefits, on the life of the decedent.

(3) Interests under any broad-based nondiscriminatory pension, profit sharing, stock bonus, deferred compensation, disability, death benefit or other such plan established by an employer for the benefit of its employees and their beneficiaries.

(4) Property passing by the decedent's exercise or nonexercise of any power of appointment given by someone other than the decedent.

**(c) Nonapplicability.**--Pursuant to 23 Pa.C.S. § 3323(d.1) (relating to decree of court), this section shall not apply in the event a married person domiciled in this Commonwealth dies during the course of divorce proceedings, no decree of divorce has been entered pursuant to 23 Pa.C.S. § 3323 and grounds have been established as provided in 23 Pa.C.S. § 3323(g).

20 Pa. Stat. and Cons. Stat. Ann. § 2203 (West).

In that Decedent died testate with a Last Will and Testament which did not mention Respondent, if we were to find that Respondent entered into a valid marriage with Decedent and that Respondent's conduct has not barred her from relief under the doctrine of unclean hands, then Respondent would be entitled to either one-half of Decedent's estate pursuant to 20 Pa. Stat. and Cons. Stat. Ann. § 2507(3) and 20 Pa. Stat. and Cons. Stat. Ann. § 2102(4), or her elective share pursuant to 20 Pa. Stat. and Cons. Stat. Ann. § 2203.

I)      **Void Marriage**

Petitioner urges us to find the marriage between Decedent and Respondent void pursuant to 23 Pa.C.S.A. § 3304(a)(3), and, as set forth in Petitioner's proposed conclusions of law, additionally asserts the theory that since the marriage between Decedent and Respondent is alleged to have been entered into for the purpose of contravening federal immigration law, than it must be deemed void *ab initio*. We will address each of the theories Petitioner asserts as a basis for finding the marriage between Decedent and Respondent void.

a.   **23 Pa.C.S.A. § 3304(a)(3)**

Under 23 Pa. Stat. and Cons. Stat. Ann. § 3304(a)(3):

7

**(a) General rule.--**Where there has been no confirmation by cohabitation following the removal of an impediment, the supposed or alleged marriage of a person shall be deemed void in the following cases:

> (3) Where either party to such marriage was incapable of consenting by reason of insanity or serious mental disorder or otherwise lacked capacity to consent or did not intend to consent to the marriage.

23 Pa. Stat. and Cons. Stat. Ann. § 3304(a)(3) (West). "There is [] the presumption of sanity and the presumption of the legality of the marriage, which presumptions can be overcome only by presentation of clear evidence that defendant was not capable at the time of the marriage ceremony to understand the nature of the marriage contract and its consequent effect." *DeMedio v. DeMedio*, 215 Pa. Super. 255, 269, 257 A.2d 290, 298 (1969). "The burden of overcoming such presumption is upon the party attacking the validity of the marriage." *Id.* (internal citation omitted). "The general rule is that a marriage valid where contracted is valid everywhere and this rule has long been upheld in this state." *Com. v. Custer*, 145 Pa. Super. 535, 539, 21 A.2d 524, 526 (1941). Under 23 Pa. Stat. and Cons. Stat. Ann. § 3304(a)(3), "a marriage [is] void only where one of the parties lacked capacity to consent or did not intend to assent to the marriage."[3] *In Interest of Miller*, 301 Pa. Super. 511, 524–25, 448 A.2d 25, 31–32 (1982) (internal citations and quotation marks omitted)." "The reason or motive underlying the decision to marry is not relevant to a finding of the [i]ntention to marry." *In re Gower's Estate*, 445 Pa. 554, 557, 284 A.2d 742, 744 (1971).

In *In Interest of Miller*, 301 Pa. Super. 511, 524–25, 448 A.2d 25, 31–32 (1982), the Superior Court shed light on the high bar for voiding a marriage pursuant to 23 Pa. Stat. and Cons. Stat. Ann. § 3304(a)(3). The Superior Court held that where "[t]he record here

---

[3] Although in *In Interest of Miller*, 301 Pa. Super. 511, 524–25, 448 A.2d 25, 31–32 (1982) the Superior Court of Pennsylvania was specifically referencing the former statute on the issue, 23 P.S. § 204, it should be noted that 23 23 P.S. § 204(a)(3) and 23 Pa. Stat. and Cons. Stat. Ann. § 3304(a)(3) are essentially identical. *See Jeffco v. Jeffco*, No. 402 WDA 2013, 2014 WL 10988175, at *5 (Pa. Super. Ct. Jan. 14, 2014) ("While *Miller* cited to former section 205(b) of the Divorce Code, the present section 3305 contains similar language.").

8

establishe[d] . . . [the couple's] *intention* to marry[,] [t]he fact . . . that [the couple's] *motive* was to avoid prosecution could not render invalid their otherwise valid . . . marriage." *In Interest of Miller*, 301 Pa. Super. 511, 521, 448 A.2d 25, 29–30 (1982) (emphasis original). In establishing that an improper motive will not be used as grounds to collaterally invalidate an otherwise proper marriage, the Superior Court stated that "[t]he lower court's finding that [the husband's] sole purpose was to practice a fraud upon this Court and upon [the wife] does not bring the marriage within [what is now Section 3304(a)(3).]" *Id.* The Superior Court emphasized that 23 Pa. Stat. and Cons. Stat. Ann. § 3304(a)(3), "makes a marriage void only where one of the parties 'lacked capacity to consent or did not intend to [consent]' to the marriage[, and] [s]ince [] neither party lacked capacity and both intended to assent, the section [was] inapplicable." *Id.*

In the instant case, the record does not support a finding that the marriage between Decedent and Respondent is void pursuant to 23 Pa. Stat. and Cons. Stat. Ann. § 3304(a)(3). The record is completely devoid of any evidence speaking to either Decedent's or Respondent's mental capacity or status at the time of their marriage in Nepal. To the contrary, there is evidence in the record indicating that both Decedent and Respondent had the present intent and capacity to consent to their marriage. Decedent expressed a desire to be married to Respondent. *See* N.T. 9/29/15, p. 126. Prior to marrying Respondent in Nepal, Decedent informed his mother that he intended to marry Respondent, and also told his sister about Respondent. *See* N.T. 9/29/15, pp. 130-131, 161-162. Respondent testified regarding her intention to marry Decedent, and her reasons for doing so. *See* N.T. 7/15/16, pp. 10-11.

Further, given the general rule that a "marriage valid where contracted is valid everywhere," and given the fact that Decedent and Respondent entered into a valid marriage under Nepalese law, Respondent and Decedent enjoy "the presumption of sanity and the

9

presumption of the legality of the marriage." *Com. v. Custer*, 145 Pa. Super. 535, 539, 21 A.2d 524, 526 (1941); *DeMedio v. DeMedio*, 215 Pa. Super. 255, 269, 257 A.2d 290, 298 (1969). These presumptions bestowed upon Decedent and Respondent with respect to their marriage "can be overcome only by presentation of clear evidence that [they were] not capable at the time of the marriage ceremony to understand the nature of the marriage contract and its consequent effect," and the burden of establishing such evidence "is upon the party attacking the validity of the marriage." *DeMedio v. DeMedio*, 215 Pa. Super. 255, 269, 257 A.2d 290, 298 (1969). In this case, the record is devoid of any medical evidence that would suggest that either Decedent or Respondent was incapable of consenting to and understanding the consequences of their marriage. Further, as demonstrated in *In Interest of Miller*, even if Decedent and Respondent did enter into their marriage for an allegedly fraudulent purpose, as asserted by Petitioner, the fact that the "sole purpose was to practice a fraud . . . does not bring the marriage within [what is now Section 3304(a)(3).]" *In Interest of Miller*, 301 Pa. Super. 511, 521, 448 A.2d 25, 29–30 (1982). Just as in *In Interest of Miller*, the record in this case clearly establishes Decedent's and Respondent's *intention* to marry, and even if their *motive* in getting married was questionable, their motive alone cannot invalidate an otherwise valid marriage under 23 Pa. Stat. and Cons. Stat. Ann. § 3304(a)(3).

Accordingly, we find Petitioner's argument that the marriage between Decedent and Respondent should be deemed void pursuant to 23 Pa. Stat. and Cons. Stat. Ann. § 3304(a)(3) lacks merit .

### b. Illegal Contract

In Petitioner's Proposed Findings of Fact and Conclusions of Law as to Lakpa Sherpa's Unclean Hands and Void Marriage, Petitioner raises the additional argument that the marriage

10

between Decedent and Respondent should be deemed void *ab initio* due to the fact that it was allegedly an illegal agreement which violates a provision of a statute, namely the federal immigration law codified at 8 U.S.C.A. § 1325(c).

"In Pennsylvania, marriage is a civil contract made between parties with the capacity so to contract." *In re Garges' Estate*, 474 Pa. 237, 240, 378 A.2d 307, 308 (1977). "Proving the existence of a marriage contract, *except where it is entered into ceremonially*, is difficult, because it is likely to arise in an informal setting, where records are not kept." *In re Garges' Estate*, 474 Pa. 237, 240–41, 378 A.2d 307, 309 (1977).

There is a "general rule that an agreement between parties which violates a provision of a statute, or which cannot be effectively performed without violating said statute, is illegal, unenforceable, and void ab initio." *Gramby v. Cobb*, 282 Pa. Super. 183, 188, 422 A.2d 889, 892 (1980). It has been elaborated:

> Where a contract is found to be against public policy it cannot, under any circumstances, be made the basis of a cause of action. The law when appealed to will have nothing to do with it, but will leave the parties just in the condition in which it finds them. If they have fully executed their unlawful contract, the law will not disturb them in the possession of what each has acquired under it. If one has executed in whole or in part, the law turns a deaf ear when he pleads for its aid to compel the other to do as much.

*Id.* (internal citations omitted).

Under federal law, it is a crime to enter into a marriage for the purpose of evading federal immigration laws, with 8 U.S.C.A. § 1325(c) stating:

> **(c) Marriage fraud**
> Any individual who knowingly enters into a marriage for the purpose of evading any provision of the immigration laws shall be imprisoned for not more than 5 years, or fined not more than $250,000, or both.

8 U.S.C.A. § 1325(c) (West). However, "[i]mmigration is a matter of exclusive federal jurisdiction." *Ruiz v. Unemployment Comp. Bd. of Review*, 911 A.2d 600, 603 (Pa. Commw. Ct.

11

2006). With regard to judicial determinations under 8 U.S.C.A. § 1325(c), federal immigration law establishes:

> The district courts of the United States shall have jurisdiction of all causes, civil and criminal, brought by the United States that arise under the provisions of this subchapter. It shall be the duty of the United States attorney of the proper district to prosecute every such suit when brought by the United States. . . .

8 U.S.C.A. § 1329 (West).

In assessing Petitioner's argument that Decedent and Respondent's marriage should be deemed void because it was an illegal agreement to circumvent federal immigration law, initially we find that Petitioner's invocation of 8 U.S.C.A. § 1325(c) as a basis for invalidating the marriage between Decedent and Respondent raises jurisdictional concerns. Federal immigration law vests the federal district courts with exclusive jurisdiction of all determinations under 8 U.S.C.A. § 1325(c),[4] which is in line with the general principle that "[i]mmigration is a matter of exclusive federal jurisdiction." *See* 8 U.S.C.A. § 1329 (West); *Ruiz v. Unemployment Comp. Bd. of Review*, 911 A.2d 600, 603 (Pa. Commw. Ct. 2006). We believe, therefore, that ruling on this basis in the present case would infringe on the federal judiciary's exclusive jurisdiction over immigration matters.[5]

Further, we see fundamental flaws in Petitioner's illegal contract argument. First, we find that the record does not support the theory that the marriage was entered into for the purpose of circumventing federal immigration law. Additionally, the principle cited by Petitioner, i.e.

---

[4] It should be noted that if we were to accept Petitioner's theory that the marriage between Decedent and Respondent was nothing more than a contract between them to violate U.S.C.A. § 1325(c), then we would thereby in practicality be making the determination that Decedent and Respondent did in fact violate U.S.C.A. § 1325(c). Further, we also note that as a criminal statute, such a finding of culpability under U.S.C.A. § 1325(c) would require the higher burden of proof of being proven beyond a reasonable doubt. *See United States v. Islam*, 418 F.3d 1125, 1127 (10th Cir. 2005) (On appeal the issue was "whether a reasonable jury could have found Defendant guilty of marriage fraud beyond a reasonable doubt.").

[5] In this context Petitioner almost exclusively cites to federal cases, the majority of which involve prosecution by the United States government. *See* Petitioner's Proposed Findings of Fact and Conclusions of Law as to Lakpa Sherpa's Unclean Hands and Void Marriage, pp. 42-44.

12

"an agreement between parties which violates a provision of a statute, or which cannot be effectively performed without violating said statute, is illegal, unenforceable, and void ab initio," naturally applies when an agreement itself violates a statute or performance of such would cause violation of a statute. *Gramby v. Cobb*, 282 Pa. Super. 183, 188, 422 A.2d 889, 892 (1980). However, to accept Petitioner's theory of relief within the context of marriage, we would have to accept the argument that the agreement to marry, i.e. an agreement between two consenting adults to take one another as each other's spouse, can in itself be a violation of a statute. We would not dispute that an agreement between two people *to become married* solely in order to circumvent federal immigration law could be held void *ab initio* as an illegal contract and would not be enforceable; however, this must be distinguished from the agreement *to marry* itself. Here, we are not only aided by the fact that the marriage between Decedent and Respondent was "entered into ceremonially," but the record also supports a finding that there was an agreement between Decedent and Respondent to take one another as each other's spouse, an agreement which in itself cannot be said to amount to a violation of any statute or established law. [6] *In re Garges' Estate*, 474 Pa. 237, 240–41, 378 A.2d 307, 309 (1977).

Based on the totality of the foregoing, we do not find Petitioner's argument, that the marriage between Decedent and Respondent should be deemed void *ab initio* due to the fact that it was allegedly an illegal agreement, to be a valid basis to deny recognition of the marriage.

## II)    Unclean Hands

Petitioner raises two arguments in asserting that Respondent should be denied her spousal share due to the doctrine of unclean hands: (1) Respondent's hands are unclean due to her allegedly committing marriage fraud and (2) Respondent's hands are unclean due to her making

---

[6] We further note that the record does not establish the existence of any agreement between Decedent and Respondent to enter into their marriage solely for the purpose of aiding Respondent in evading immigration laws.

13

"willful and material representations regarding the bona fides of her alleged marriage to the Decedent, which clearly shows she is acting deceitfully regarding the matter in controversy."

"In the exercise of the limited jurisdiction conferred on it by statute, it is plain that the Orphans' Court must apply the rules and principles of equity[,] [t]hus, the familiar equity maxim 'he who comes into a court of equity must come with clean hands' applies to matters within the Orphans' Court's jurisdiction." *In re Estate of Pedrick*, 505 Pa. 530, 543, 482 A.2d 215, 222 (1984) (internal citations omitted). "The maxim itself is derived from the unwillingness of a court to give relief to a suitor who has so conducted himself as to shock the moral sensibilities of the judge, and it has nothing to do with the rights or liabilities of the parties." *Id.* (internal quotation marks omitted). "[T]he clean hands doctrine does not bar relief to a party merely because his conduct in general has been shown not to be blameless; the doctrine only applies where the wrongdoing directly affects the relationship subsisting between the parties and is directly connected with the matter in controversy." *Id.* "It does not apply to collateral matters not directly affecting the equitable relations which exist between the parties." *Id.* Further, the unclean hands doctrine "necessarily gives wide range to the equity court's use of discretion," and the court "is free to refuse to apply the doctrine if a consideration of the entire record convinces [it] that an inequitable result will be reached." *Shapiro v. Shapiro*, 415 Pa. 503, 507, 204 A.2d 266, 268 (1964).

We find Petitioner's assertion that Respondent should be found to have unclean hands due to the allegations of her committing marriage fraud to lack merit. In addition to the reasons discussed above for not finding the marriage void, we do not believe there is sufficient evidence to invalidate the marriage between Decedent and Respondent based upon Petitioner's allegations of immigration fraud. Although the record indicates that the marriage in question was not

14

traditional in many respects, the record is replete with evidence that there undisputedly was a marriage between Decedent and Respondent within the eyes of the law. There was testimony that Decedent wanted to marry Respondent, and wanted to do so for companionship. N.T. 9/28/16, pp. 53-54, 86, 168-169; N.T. 9/29/15, p. 126, 161-162. There was also testimony that Respondent wanted to marry Decedent for stability, support, and companionship. N.T. 7/15/16, pp. 10-11. Further, there was no testimony establishing an agreement between Decedent and Respondent to marry for the sole purpose of helping Respondent circumvent federal immigration laws. We also note that there was no evidence presented establishing that a federal agency ever concluded that the marriage between Decedent and Respondent ran afoul of federal immigration law. Accordingly, we do not believe it would be an appropriate use of our discretion to deny Respondent's spousal share claim due to allegations of marriage fraud in light of the totality of the record.

Petitioner also asserts Respondent's conduct throughout the course of this litigation as a basis to deny Respondent's spousal share claim under the doctrine of unclean hands. In support of this position, Petitioner largely restates her overarching theory of the case and asserts allegations of misconduct, in many instances without citing to the record to substantiate said allegations. *See* Petitioner's Proposed Findings of Fact and Conclusions, pp. 51-54. She further urges the Court to infer nefarious intent simply due to the unconventional nature of the marriage. *See* Petitioner's Proposed Findings of Fact and Conclusions, pp. 51-54. While the Court does recognize that Respondent was by no means a flawless party throughout the course of this litigation, "[t]he clean hands doctrine [] does not require that a [party] be denied equitable relief merely because his conduct has been shown not to have been blameless." *Stauffer v. Stauffer*, 465 Pa. 558, 575, 351 A.2d 236, 244 (1976). We find that Respondent's conduct throughout the

15

course of this case does not rise to a level which bars Respondent on equitable grounds from exercising her right to her statutorily entitled spousal share.

## CONCLUSION

Based upon the reasons stated herein, we find that Petitioner's request to (1) annul the marriage between Decedent and Respondent on the basis of Petitioner's allegations that the marriage between Decedent and Respondent was a "sham" in order to perpetrate immigration fraud or (2) strike Respondent's claim for her elective share of the Decedent's estate via the doctrine of unclean hands, should be denied. Accordingly, we issue the attached Decree denying and dismissing Petitioner's Petition to (1) Strike Lakpa Sherpa's Claim to be Recognized as Decedent's Surviving Spouse because the Alleged Marriage between Lakpa Sherpa and Decedent is Fraudulent and therefore Void under 23 Pa.C.S.A. § 3304(a)(3)[,] and (2) Strike Lakpa Sherpa's Claim Against Decedent's Estate Pursuant to 20 Pa.C.S.A. § 2507(3) because Decedent's Last Will and Testament was Drafted in Contemplation of his Future Marriage to Lakpa Sherpa; and Petitioner's "Order to Show Cause" requesting that the Court strike Respondent's spousal share claim with prejudice pursuant to her allegation that Respondent is in violation of the doctrine of unclean hands.

BY THE COURT:

_3/3/2017_
Date

C. THEODORE FRITSCH, JR., ADMN. J.

N.B. It is your responsibility to notify all interested parties of the above action.

16

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

In re: ESTATE OF GENE B. ROSMARIN, :
Deceased                 :     No. 2014-0441
                                 :

## OPINION

Appellant, Barbara Nolan, Executrix of the Estate of Gene Barclay Rosmarin, (hereinafter, "Appellant"), has filed an appeal to the Superior Court of Pennsylvania from this Court's March 3, 2017 Decree denying Appellant's Petition to (1) Strike Lakpa Sherpa's (hereinafter "Appellee") Claim to be Recognized as Gene B. Rosamarin's (hereinafter "Decedent") Surviving Spouse pursuant to 23 Pa.C.S.A. § 3304(a)(3); (2) Strike Appellee's claim against Decedent's estate pursuant to 20 Pa.C.S.A. § 2507(3), and (3) Appellant's "Order to Show Cause" requesting that the Court strike Appellee's spousal share claim pursuant to the doctrine of unclean hands. This Opinion is filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## SUBSEQUENT PROCEDURAL BACKGROUND

On March 7, 2017, this Court issued a Decree and Memorandum Opinion that denied Appellant's Petition to (1) annul the marriage between Decedent and his second-wife, Appellee Lakpa Sherpa, (2) strike Appellee's claim for her elective share of the Decedent's estate under the doctrine of unclean hands, and (3) Appellant's "Order to Show Cause" requesting that the Court strike Appellee's spousal share claim pursuant to the doctrine of unclean hands. On March 23, 2017, Appellant filed a post-trial motion pursuant to Pa. R.C.P. 227.1 requesting this Court reconsider our ruling denying Appellant's "Order to Show Cause." By Order issued March 29, 2017, we denied Appellant's post-trial motion.

CONCISE STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Appellant filed a statement of matters complained of on appeal (hereinafter "concise statement" or "Rule 1925(b) Statement") on or about April 24, 2017, approximately twenty-four days after filing his Notice of Appeal and twenty days after our April 3, 2017 Order directing her to file and serve the concise statement.

Preliminarily, we observe that an appellant may waive all issues complained of on appeal, when an appellant files a concise statement containing a voluminous number of lengthy issues in an effort to overwhelm and confuse the trial court. Tucker v. R.M. Tours, 2007 PA Super 352, 939 A.2d 343 (2007), aff'd, 602 Pa. 147, 977 A.2d 1170 (2009). Such a voluminous concise statement may indicate a deliberate attempt to circumvent the meaning and purpose of Pennsylvania Rule of Appellate Procedure 1925 and to overwhelm and frustrate the court system. Jiricko v. Geico Ins. Co., 2008 PA Super 63, 947 A.2d 206 (2008).

We further recognize that "[t]he extreme action of dismissal should be imposed by an appellate court sparingly, and clearly would be inappropriate when there has been substantial compliance with the rules and when the party [moving for quashal of the appeal] has suffered no prejudice." In re K.T.E.L., 983 A.2d 745, 747 (Pa. Super. Ct. 2009) quoting Stout v. Universal Underwriters Ins. Co., 421 A.2d 1047, 1049 (Pa. 1980)).

In Appellant's concise statement, she raises twenty-seven (27) issues in a case involving the basic questions of whether a marriage should be deemed valid and whether the surviving spouse should be permitted to take a spousal share of a decedent's estate. The great majority of the issues raised appear to address, *seriatim*, virtually every conclusion that we reached in our sixteen-page Memorandum Opinion. As such, we perceive that Appellant's concise statement is overly broad and all encompassing, and suggest that this appeal could be dismissed due to the

2

voluminous nature of the statement itself.

Assuming *arguendo* that Appellant's concise statement does not warrant dismissal due to its voluminous nature, we will address Appellant's allegations of error as stated in her concise statement, which we set forth *verbatim*, as follows:

1. The Court of Common Pleas of Bucks County, Orphans' Court, erred in its legal conclusion that "[u]nder 23 Pa. C.S.A. §3304(a)(3), 'a marriage [is] void only where one of the parties lacked capacity to consent or did not intend to assent to the marriage.' In Interest of Miller, 301 Pa. Super. 511, 524-25,448 A. 2d 25, 31-32 (1982)(internal citations and quotations omitted)[]", which was entered in derogation of well-settled principles of statutory construction and was based on improper application of statutory interpretation and the plain meaning of 23 Pa. C.S.A. §3304(a)(3).

2. The Orphans' Court erred in its legal conclusion that 23 Pa. C.S.A. § 3304(a)(3) does not function to annul marriage undertaken solely to defraud United States Citizenship and Immigration Services (UUSCIS) based upon lack of capacity to consent to a marriage void for illegality.

3. The Orphans' Court erred in its reliance on In Interest of Miller, 301 Pa. Super. 511, 448 A. 2d 25 (1982) to modify the plain language of 23 Pa. C.S.A. §3304(a)(3), the holding of which related to the interpretation of a prior statute concerning voidable marriages and not a void marriage.

4. The Orphans' Court erred in its legal conclusion that In Interest of Miller, 301 Pa. Super. 511, 448 A. 2d 25 (1982), stands for the proposition that a marriage entered into to defraud United Sates Citizenship and Immigration Services (USCIS) does not render invalid a marriage that followed the formal trappings of a marriage contract but could not constitute a valid marriage by reason of the illegal purpose of the marriage contract.

5. The Orphans' Court erred in its legal conclusion that a party can consent to enter into a contract of marriage for an unlawful purpose.

6. The Orphans' Court erred in its legal conclusion that "Even if Decedent and Respondent did enter into their marriage for an allegedly fraudulent purpose, as asserted by Petitioner, the fact that the 'sole purpose was to practice a fraud...does not bring the marriage within [what is now Section 3304(a)(3).])' In Interest of Miller, 301 Pa. Super. 511, 521, 448 A. 2d 25, 29-30 (1982)."

7. The Orphans' Court erred in its legal conclusion that "even if their motive in getting married was questionable, their motive alone cannot invalidate an otherwise valid marriage under 263 Pa. Stat. and Cons. Stat. ann. § 3304(a)(3)."

3

8. The Orphans' Court committed reversible error when it went against the weight of the evidence to conclude that the record does not support the theory that the marriage was entered into for the purpose of circumventing federal immigration law when an IRS-enrolled agent testified Decedent admitted the marriage was undertaken solely to defraud USCIS.

9. The Orphans' Court erred in its legal conclusion the marriage between Decedent and Respondent should not be deemed void *ab initio* despite the fact that the marriage was an illegal agreement, reasoning an illegal agreement to marry is not a valid basis to deny recognition of the marriage.

10. The Orphans' Court erred in ruling that it could not render a decision on whether the marriage was void because it was an illegal agreement undertaken to circumvent federal immigration law because such a decision would infringe on the federal judiciary's exclusive jurisdiction over immigration matters.

11. Whether the Orphans' Court erred when it went against the weight of the evidence to hold that there was insufficient evidence to invalidate the marriage between Decedent and Respondent based upon Petitioner's evidence of immigration fraud.

12. The Orphans' Court erred in rendering the conclusion of law based on improper application of statutory interpretation that there undisputedly was a marriage between Decedent and Respondent within the eyes of the law, in derogation of well-settled principles of squatty construction.

13. The Orphans' Court clearly abused its discretion in holding that there was "no testimony establishing an agreement between Decedent and Respondent to marry for the sole purpose of helping Respondent circumvent immigration laws[]" when there was substantial testimony admitted into the record without objection that Decedent and Respondent married for the sole purpose of circumventing federal immigration laws.

14. The Orphans' Court abused its discretion by failing to deny Respondent's spousal share claim based on the doctrine of unclean hands when Respondent called witnesses, such as Ang Chokpa Sherpa, who perjured herself in order to testify in support of the marriage and admitted that Respondent shared information with her prior to her prior [sic] to having testified, in violation of the Court's sequestration Order.

15. The Orphans' Court abused its discretion in denying Petitioner's Petition to strike Respondent's spousal share claim based on unclean hands when Respondent called her cousin, Ang Chokpa Sherpa, to testify in support of her alleged marriage and Ang Chokpa Sherpa's testimony was false and was plainly contradicted by documents entered into evidence on the record, including Ang Chokpa Sherpa's claim that she was not in Nepal for Decedent and Respondent's wedding, which was

4.

controverted by a letter written by Ang. Chokpa Sherpa and submitted to USCIS stating that she as a witness to the wedding.

16. The Orphans' Court Order and Decision went against the weight of the documentary evidence showing that Decedent made false representations to immigration about the bona fides of the alleged marriage, Respondent's family made false representations to immigration about the alleged union, and Decedent's tax preparer testified that Decedent admitted he had committed marriage fraud to help his girlfriend, Ang Chokpa Sherpa, obtain immigration statute for her cousin, Respondent, and is clear error.

17. The Orphans' Court erred in relying upon In re Manfredi's Estate, 399 PA. 285, 291, 159 A.2d 697, 700 (1960), for the proposition that marriage in Pennsylvania is a civil contract by which a man and a woman take each other for Husband [sic] and wife, but failing to acknowledge that a civil contract in the Commonwealth of Pennsylvania for an illegal purpose is void.

18. The findings of fact made buy the Orphans' Court went against the weight of the evidence and the Court relied primarily on hearsay testimony from Respondent's friends and cousin, rather the documentary evidence that the Court admitted into evidence and which controverts Respondent's claim. Therefore, the Orphans' court made clear error.

19. The Orphans' Court erred by asserting the position that a party's reason or entering into a marriage, including in order to circumvent immigration laws, is not relevant to the findings of whether there was an intention to marry and ruling upon In re Gower's Estate, 445 Pa. 554, 557, 284 A.2d 742, 744 (1971) in support of that erroneous position.

20. The Orphans' Court erred in holding that Petitioner's argument that the marriage between Decedent and Respondent should be deemed void ab initio because it was an illegal agreement, is not a valid basis to deny recognition of a marriage because an agreement to marry cannot in itself be a violation of a statute.

21. The Orphans' Court erred in holding that Respondent had clean hands because there was ample evidence that Respondent was lying about material issues and calling witnesses to lie on her behalf, which directly affected the relationship subsisting between the parties to the litigation.

22. The Orphans' Court erred in failing to apply the doctrine of unclean hands after finding the Respondent was "by no means a flawless party throughout the course of this litigation", and when the evidence admitted into the record established that Respondent and her cousin, Ang Chokpa Sherpa, lied under oath, thus directly affecting the relationship subsisting between the parties.

23. The Orphans' Court erred in denying Petitioner's request to (1) annul the marriage

5

between Decedent and Respondent on the basis of Petitioner's allegations that the marriage between Decedent and Respondent was a "sham" in order to perpetrate immigration fraud, and (2) strike Respondent's claim for her elective share of the Decedent's estate via the doctrine unclean hands.

24. The Orphans' Court erred in denying Petitioner's October 26, 2016 request to admit into evidence affidavits prepared by Respondent's mother, daughter, cousin, Ang Chokpa Sherpa, and the Decedent. On Page 21-22 of the October 26, 2016 transcript, Respondent acknowledge [sic] that the Immigration Application previously admitted into evidence was authentic, but objected to these affidavits. These additional affidavits were produced by Detective John Koretzky, who obtained an official copy of Respondent's Immigration Application from USCIS (pg. 35) during the course of his investigation and these should have been admitted as I was a more complete version of the immigration packet. Further, these affidavits evidenced material misrepresentations by Respondent and her cousin, Ang Chokpa Sherpa, and were therefore highly probative and the denial of same prejudicial to Petitioner.

25. The Orphans' Court abused its discretion by failing to find that Lakpa Sherpa had unclean hands when Detective Koretzky testified on October 26. 2016 that Lakpa Sherpas fraudulent activity was uncovered by Homeland Security and that the Decedent's affidavit was written in broken English—the Decedent being a natural born citizen of the United States.

26. The Orphans' Court erred in sustaining Respondent's objection to the testimony of Lynne Jones on July 13, 2016 as hearsay (page 11-12 of transcript), which testimony went to Cathy Bassiouni's then existing state of mind prior to testifying in this case that the alleged marriage was not bona fide.

27. Petitioner respectfully requests that the Order entered on Mach 3, 2017 be Vacated [sic] and that the matter be remanded for a new trial consistent with the ruling of the Superior Court.

## DISCUSSION

From the onset, we believe that the majority of the issues Appellant raises were directly addressed in our Memorandum Opinion of March 7, 2017. To the extent that Appellant's concise statement raises issues that were not directly addressed by the Memorandum Opinion, we will address them separately below. For ease of discussion we classify these issues into three topics: (1) claims that are too vague to warrant review, (2) the non-admission of affidavits prepared by Appellee's mother, daughter, cousin, and the Decedent, and (3) the sustaining of Appellee's

6

objection to the testimony of Lynne Jones because such testimony was hearsay that did not fall within the then existing state of mind hearsay exception. With respect to the remainder of Appellant's claims, we attach our March 7, 2017, Memorandum Opinion hereto in support of our decision.

## Vague Issues

We suggest that certain issues raised by Appellant in her 1925(b) Statement of Errors Complained of on Appeal are too vague and unspecific to merit review. This circumstance ultimately leaves the Court to guess as to what the issues are Appellant wishes to raise on appeal.

Pennsylvania Rule of Appellate Procedure 1925(b)(4) reads, in relevant part:

> (4) *Requirements; waiver.*
>
> > (i) The Statement [of errors complained of on appeal] shall set forth only those rulings or errors that the appellant intends to challenge.
> > (ii) The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge. The judge shall not require the citation to authorities; however, appellant may choose to include pertinent authorities in the Statement.

Pa.R.A.P. 1925(b)(4).

"[T]he question of what constitutes a sufficient 1925(b) statement [has been considered] on many occasions, and it is well-established that '[an] [a]ppellant's concise statement must properly specify the error to be addressed on appeal." In re A.B., 2013 PA Super 43, 63 A.3d 345, 350 (2013) *quoting* Commonwealth v. Hansley, 24 A.3d 410, 415 (Pa.Super.2011), *appeal denied,* 613 Pa. 642, 32 A.3d 1275 (2011)). "'The Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal,'" and a court "may find waiver where a concise statement is too vague." Id. "'When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review.'" Id. (quoting

7

Commonwealth v. Dowling, 778 A.2d 683, 686 (Pa.Super.2001)). Further, "'[a] Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.'" Id. The Rule 1925(b) statement must be sufficiently detailed enough so that a judge may write an opinion. Burgoyne v. Pinecrest Cmty. Ass'n, 2007 PA Super 132, 924 A.2d 675, 678 (2007) *citing* Commonwealth v. Reeves, 907 A.2d 1, 3 (Pa.Super.2006)); 202 Island Car Wash, L.P. v. Monridge Const., Inc., 2006 PA Super 362, 913 A.2d 922, 925 (2006) *quoting* Commonwealth v. Lemon, 804 A.2d 34, 38 (Pa.Super.2002)).

Here, Appellant raises numerous vague issues that preclude meaningful review. In particular, issues twelve[1], fourteen[2], eighteen[3], twenty-one[4], and twenty-two[5] lack the requisite specificity to enable this Court to conduct a thorough analysis. What Appellant provides are merely conclusory accusations that are neither specific in subject matter nor in identifying where in the record such issues are found. In particular, issue twelve accuses this Court of improper statutory interpretation. Appellant does not cite a specific statute or explain how this Court specifically misapplied said statute. Issue eighteen alleges that this Court made findings of fact that went against the weight of the evidence in relying on hearsay testimony rather than

---

[1] Issue 12 alleges, "[t]he Orphans' Court erred in rendering the conclusion of law based on improper application of statutory interpretation that there undisputedly was a marriage between Decedent and Respondent within the eyes of the law, in derogation of well-settled principles of squatty construction."

[2] Issue 14 alleges, "[t]he Orphans' Court abused its discretion by failing to deny Respondent's spousal share claim based on the doctrine of unclean hands when Respondent called witnesses, such as Ang Chokpa Sherpa, who perjured herself in order to testify in support of the marriage and admitted that Respondent shared information with her prior to her prior [sic] to having testified, in violation of the Court's sequestration Order."

[3] Issue 18 alleges, "[t]he findings of fact made by the Orphans' Court went against the weight of the evidence and the Court relied primarily on hearsay testimony from Respondent's friends and cousin, rather the documentary evidence that the Court admitted into evidence and which controverts Respondent's claim. Therefore, the Orphans' court made clear error."

[4] Issue 21 alleges, "[t]he Orphans' Court erred in holding that Respondent had clean hands because there was ample evidence that Respondent was lying about material issues and calling witnesses to lie on her behalf, which directly affected the relationship subsisting between the parties to the litigation."

[5] Issue 22 alleges, "[t]he Orphans' Court erred in failing to apply the doctrine of unclean hands after finding the Respondent was "by no means a flawless party throughout the course of this litigation", and when the evidence admitted into the record established that Respondent and her cousin, Ang Chokpa Sherpa, lied under oath, thus directly affecting the relationship subsisting between the parties."

8

documentary evidence. Appellant does not identify what specific hearsay evidence this Court allegedly erroneously relied upon.

Issues fourteen, twenty-one, and twenty-two all allege that witnesses perjured themselves. In making such allegations, Appellant neither specifically identifies the specific portion of the testimony that is suspect nor cites to the record. If the Court were to attempt to write an opinion based on Appellant's vague perjury allegations, we would be forced to guess the specifics of such claims. Ostensibly, we would be drafting arguments on Appellant's behalf. We suggest that the aforementioned issues Appellant raises are so vague as to be deemed waived.

### The Affidavits

Issue twenty-four of Appellant's Rule 1925(b) Statement alleges that we erred in denying Appellant's request to admit affidavits prepared by Appellee's mother, daughter, cousin, and Decedent. Appellant argues that these affidavits offered a more complete version of the immigration applications that were already admitted into evidence. Appellant also argues that the affidavits created by Appellee and Ang Chokpa Sherpa would have evidenced that both Appellee and Ang Chokpa Sherpa made material misrepresentations throughout the course of the proceedings. We suggest that denying Appellant's request was proper.

Under Pennsylvania law, the standard of review governing evidentiary issues is settled. The decision to admit or exclude evidence is committed to the trial court's sound discretion, and evidentiary rulings will only be reversed upon a showing that a court abused that discretion. A finding of abuse of discretion may not be made "merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." Commonwealth v. Koch, 630 Pa. 374, 383–84, 106 A.3d 705, 710–11 (2014) *quoting* Commonwealth v. Laird,

9

605 Pa. 137, 988 A.2d 618, 636 (2010); See also Commonwealth v. Sanchez, 614 Pa. 1, 36 A.3d 24, 48 (2011). Matters within the trial court's discretion are reviewed on appeal under a deferential standard, and any such rulings or determinations will not be disturbed short of a finding that the trial court "committed a clear abuse of discretion or an error of law controlling the outcome of the case." Commonwealth v. Chambers, 602 Pa. 224, 980 A.2d 35, 50 (2009) (jury instructions).

Furthermore, hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Commonwealth v. Watley, 2016 PA Super 311, 153 A.3d 1034 (2016) *citing* Pa. R. Evid. 801(c). The admissibility of out-of-court statements by an unavailable witness turns, not upon the presence or absence of *indicia* of reliability, but upon a determination of whether the statements are testimonial or nontestimonial in nature. In re N.C., 2013 PA Super 229, 74 A.3d 271 (2013), aff'd, 629 Pa. 475, 105 A.3d 1199 (2014).

In the instant case, the affidavits at issue could not be properly authenticated. The affidavits were also testimonial in nature. Trial testimony revealed that Detective Koretzky received the affidavits from another governmental agency. Detective Kortetzky could neither establish the affidavits' veracity nor could he indicate what specific material misrepresentations the affidavits might contain. N.T. 10/26/16 pp 35-42. Appellant also sought to introduce these affidavits on the last day of hearings without providing Appellee sufficient notice to evaluate the affidavits. Moreover, the affidavits themselves constitute inadmissible hearsay as Appellant would have the court admit these affidavits for the truth of the content they assert. This court is aware of no hearsay exception that would have permitted the affidavit to become part of the record. Accordingly, we suggest that it was proper to deny Appellant's request to admit into evidence the affidavits of Appellee's mother, daughter, cousin, and the Decedent.

10

## Appellee's objection to the testimony of Lynne Jones

Issue twenty-six in Appellant's Rule 1925(b) Statement alleges that this Court erred in sustaining Appellee's objection to the testimony of Lynne Jones because such testimony was admissible under the then state of mind hearsay exception. We suggest that Appellant's position lacks merit.

Under Pennsylvania law, the rule against hearsay evidence does not preclude statements concerning the declarant's then-existing state of mind. Pa.R.E. 803. Under this rule:

> "A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." Pa.R.E. 803.

There are ordinarily three instances in which the state of mind exception to the hearsay rule is applicable: (1) to prove the declarant's state of mind when that state of mind is an issue directly related to a claim or defense in the case; (2) to demonstrate that a declarant did a particular act that was in conformity with his or her statement after having made the statement; and (3) an out of court statement related to the person's memory or belief is admissible in the limited instance where it relates to the execution, revocation, identification or terms of the declarant's will. Schmalz v. Manufacturers & Traders Trust Co., 2013 PA Super 52, 67 A.3d 800 (2013) *citing* Pa. R.E. 803. "[T]he determination of whether out-of-court statements are admissible under the state of mind exception to the hearsay rule is within the sound discretion of the trial court and will be reversed only upon an abuse of that discretion." Commonwealth v. Begley, 566 Pa. 239, 780 A.2d 605, 623 (Pa.2001).

In the instant case, a careful review of the trial record indicates that it was proper to sustain Appellee's objection. Appellant sought to introduce the contents of a telephone conversation by

11

and between Lynne Jones and Cathy Bassiouni. N.T. 07/13/16. pp. 10-13. Ms. Bassiouni, as the declarant, was allegedly commenting on the circumstances of the marriage between Appellee and the Decedent. Accordingly, it would be improper to admit content of the conversation under the state of mind hearsay exception because the declarant's state of mind is not an issue directly related to a claim or defense in the case. Bassiouni was not making a statement that revealed her mental state or a statement that conveyed an emotional, sensory, or physical condition. The telephone conversation was also not proffered to demonstrate that the declarant engaged in a particular act in conformity with the statement. Furthermore, the Decedent's will with respect to its execution, revocation, identification, or terms were not an issue in the case. It is clear that Appellant sought to use the then existing state of mind exception as a conduit to admit the telephone conversation's contents which Appellant hoped to be admitted as substantive evidence. The rule against hearsay strictly prohibits such conduct as Appellant would have this court permit the use an out-of-court statement for the truth of the matter asserted where no hearsay exception applies. We therefore suggest that sustaining Appellee's objection was proper.

## CONCLUSION

Based upon the foregoing and for the reasons previously set forth in our attached Memorandum Opinion of March 7, 2017, we suggest that the present appeal should be dismissed.

BY THE COURT:

_____5 / 26 / 2017_____
DATE

_____
C. THEODORE FRITSCH, JR., ADMIN. J

N.B. It is your responsibility
to notify all interested parties
of the above action.

12